THE STATE OF KANSAS, *on the relation of F. B. Dawes, Attorney General,* v. THE BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY.

No. 10614.

1. CONSTITUTION — §§ 1, 5, *art.* 12.  *Act authorizing County Commissioners to build bridge within city, control remaining with city, does not violate.*  Chapter 82 of the Laws of 1895, being "An act to provide for the erection of a bridge across the Kansas River in the city of Topeka, Shawnee County, Kansas, and authorizing the Board of County Commissioners of said county to issue bonds in payment therefor," is not in conflict with sections 1 and 5 of article 12 of the Constitution.

2. LETTERS PATENT — *Contract for public improvement may be for structure protected by.*  The public is not precluded from using what is deemed to be desirable and necessary for the public welfare because it may be covered by letters patent and a royalty must be paid for the right to use the same.

3. COMPETITION IN BIDDING — *fair opportunity for, given by stipulating in advertisement for contract for patented structure, the royalty to be paid patentee.*  The royalty to be paid was fixed and certain, and the proposal inviting bids for the building of the bridge definitely stated that the cost of such royalty should be paid by the accepted contractor in a particular way.  All bidders were placed upon an equal footing with respect to the cost of the patent, several bids were actually made, and the contract was let to the lowest bidder.  *Held,* that there was actual competition in bidding for the construction of the bridge, and a substantial compliance with the law requiring the letting of the contract to the lowest responsible bidder.

*Error from Shawnee District Court.*

*Hon. Z. T. Hazen, Judge.*

AFFIRMED.                         OPINION FILED JULY 11, 1896.

THIS was an action by the State on the relation of the Attorney General against the Board of County Commissioners of Shawnee County to enjoin the Board from issuing or selling the bonds of the County amounting to $150,000, voted for the purpose of pro-

curing funds to construct a bridge across the Kansas River in the city of Topeka. In pursuance of the provisions of Chapter 82, Laws of 1895, the County Board submitted a proposition to the electors of the county upon the question of issuing bonds in the sum of $150,000, for the purpose of building a Melan Concrete Steel-Arch Bridge across the Kansas River, on Kansas Avenue, in the city of Topeka, and the election resulted in 3,801 votes in favor of the proposition and 2,181 against the same. Upon a canvass of the votes the proposition was declared to have been carried; and a contract was then made with Keepers & Thatcher, the owners of the patent upon the Melan System of building bridges, to prepare plans and specifications for the building of a bridge at a price not to exceed $135,000. Plans and specifications were prepared and bids were invited, of which due notice was given. One of the conditions of the proposals for bids was, that the contractors should pay to Keepers & Thatcher $10,000 to discharge the royalty or patent charges for the use of the Melan System of construction; and the Board was authorized to deduct and retain for that purpose from each monthly estimate the proportionate part necessary for the payment of the royalty. The contract was let by the County Board for the construction of the bridge for $125,000. Provision was also made for the appointment and compensation of a superintendent of construction, whose duty was to inspect and test material used in building the bridge and to supervise its construction, and his duties were to end when the work was fully completed. Steps were being taken for the sale of the bonds for the purpose of raising funds for the construction of the bridge when the present proceeding was begun. At a hearing in the District

Court the application for injunction was denied and judgment given in favor of the defendant.

*F. B. Dawes*, Attorney General, and *John Guthrie*, for plaintiff in error.

*H. C. Safford*, County Attorney, for defendant in error; *Valentine, Godard & Valentine*, and *H. G. Larimer*, of counsel.

JOHNSTON, J.   Several grounds for injunction were presented by the plaintiff, but the main one is the alleged invalidity of chapter 82, Laws of 1895, under the provisions of which the bonds were voted.   It was first suggested that the proposition sub-1. Constitution- mitted to the electors for authority to pro-ality of act. cure a loan and to build the bridge did not receive the requisite number of votes, but at the argument the Attorney General frankly conceded that a sufficient number of affirmative votes were cast to carry the proposition if the statute warranted the voting and issuance of bonds.   The objection urged against the validity of the statute is that it withdraws a portion of the territory of Topeka from its corporate control, and that the act, being special, violates sections 1 and 5 of article 12 of the Constitution, which provide that the Legislature shall pass no special act conferring corporate powers, and that provisions for the organization of cities, towns and villages shall be made by general law.   These constitutional provisions do not apply to *quasi* corporations, nor is there any reason why the Legislature may not, by special act, confer corporate powers upon counties or other like corporations.   They do apply to municipal corporations proper, and so it has been held in this State that a special act which attempts to enlarge or diminish

the boundaries or corporate powers of a city is void. *Gray v. Crockett*, 30 Kan. 138. It follows, therefore, that if the act in question confers corporate powers upon the city of Topeka, or takes from it the corporate control of its streets, it cannot be sustained.

In general, it may be said that the city is vested with the control of its streets, is charged with the duty of keeping them in repair, and ordinarily is lia-

2. Contract may be for structure protected by letters patent.

ble for injuries resulting from the omission of that duty. The city has power to build bridges within its limits, and where a bridge is a part of a street the duty and burden of maintaining the bridge as well as other parts of the street ordinarily rests upon the city. The fact that a county may have built a bridge within the limits of a city does not necessarily imply that the burden of maintaining it is upon the county, nor that the city will be excluded from its control. It is the policy of our law that there shall be unity of control of streets and thoroughfares ; therefore it must generally be held that a city has control over every part of its own streets and is responsible for their condition. Apart from the maintenance and control of the streets, it is doubtless competent for the Legislature to authorize a county to build a bridge at any point within the limits of the county. The fee of the streets is in the county for the benefit of the public ; and, as a bridge is built for the whole public, no reason is seen why the county may not contribute the whole or any part of the expense of constructing a bridge even though it be within the limits of a city. *Comm'rs of Wyandotte Co. v. City of Wyandotte*, 29 Kan. 431 ; *City of Eudora v. Miller*, 30 id. 494 ; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 id. 197. In the case last cited, the Court, after holding that usually the city, and not the

county, has control over the streets and is liable for damages to persons injured thereon by reason of their being in an unsafe condition, remarked, that probably the county has the power to construct a bridge within the limits of a city ; but the mere fact that it may have built the bridge was held to be no reason why the county should be compelled to keep it in repair. That the county may build a bridge upon a street of the city, wholly or partly at its own expense, is really not denied ; but it is contended that, when built, the act in question would give the future control and maintenance of the bridge to the county, and, in that way deprive the city of authority to regulate and control the same.　That contention is based upon a proviso near the end of the act : " That said bridge shall remain under the charge and control of the Board of County Commissioners of Shawnee County and such Commissioners shall have power to appoint a superintendent for the construction of such bridge and to fix his salary."　Although the question is not free from doubt, we are inclined to the opinion that the proviso relates only to " charge and control " during the time of construction, and that the future maintenance and control were not within the legislative purpose. Outside the language of this proviso, the entire act is devoted to provisions for the construction of a bridge and the raising of funds with which to construct it.

The title of the act is specific and limited, indicating that the act contains only provisions for the erection of a bridge and for raising means with which to pay for the same.　Nothing in the title or body of the act indicates a purpose to withdraw from the city any control over its streets, or to relieve it from the maintenance of the bridge after its construction.　As the act relates to construction alone, it is not an un-

natural inference that the charge and control of the County Board mentioned in the proviso is only to be exercised during construction. This is the more apparent from the fact that, in the same proviso and as a part of the same sentence, the Board is vested with authority to appoint a superintendent of construction and to fix his compensation. Ordinarily, the contractor would have charge and control of the bridge during construction, but, for some reason, the Legislature deemed it best that the charge and control of the structure during the building of the same should be in the Board of County Commissioners; and, to enable them to carry out that purpose and exercise that control, authorized them to appoint and pay a superintendent of construction to represent them and to supervise the work.

Considerable reliance is placed by the plaintiff on the case of *Comm'rs of Shawnee County v. The State, ex rel.*, 49 Kan. 486, where it was held that an act providing for the building of a bridge by the County in the city of Topeka was obnoxious to the same provisions of the Constitution. That case, however, is easily distinguished from the one under consideration. There, the County was given full control over the bridge and a portion of the street, with authority to maintain and keep the same in good repair. It also prohibited the City from authorizing the laying of any railway track, gas pipes or telephone wires over or along the bridge, as it might lawfully do under its general corporate powers. These provisions were clearly violative of the Constitution, and the present act was manifestly framed with a view of avoiding the defects pointed out in the former act. Considering that the acts of 1891 and 1895 each provided for the building of a bridge at the

3. Case distinguished.

Opinion of the Court.

same place, and, further, that the last act was passed with a view of curing the faults of the first, it seems reasonably clear that the Legislature of 1895 did not intend to include a provision that defeated the former act.   We think that the act in question admits of the interpretation that the charge and control spoken of only refer to the period of construction, while the other view would operate to destroy the act and defeat the accomplishment of the legislative purpose. It is a recognized rule, followed by all courts in determining the validity of legislative enactments, that they will not be declared void if they can be upheld upon any reasonable grounds.   If its invalidity is a matter of reasonable doubt, the doubt must be resolved in favor of the act.   *In re Pinkney, Petitioner,* 47 Kan. 89.   Although not free from doubt, we prefer to adopt the view which sustains the act, rather than the one which would strike it down ; and we therefore conclude that the act is valid.

It is claimed by one of the counsel for the State that the injunction should be allowed because the

4. Competition in bidding.

Melan bridge proposed to be constructed is covered by letters patent, which would prevent fair competition in bidding for the work, which the act required to be let to the lowest bidder.   In some of the earlier decisions this view was taken ; but the fact that patented methods and processes, many of which are desirable and necessary to the public welfare, enter so largely into all kinds of public work, has led to the adoption of a different view.   It was hardly intended by the law that the public should be barred from using recent inventions or obtaining beneficial improvements because they were covered by an authorized patent or were the product of exclusive manufacture.   *Yarnold v. City of*

18—57 KAN.

*Lawrence*, 15 Kan. 126 ; *In the matter of the Petition of Dugro*, 50 N. Y. 513 ; *Baird v. Mayor*, 96 id. 567 ; *Hobart v. The City of Detroit*, 17 Mich. 246 ; *Motz et al. v. The City of Detroit et al.*, 18 id. 515 ; *The City of Detroit v. Robinson*, 38 id. 108 ; *Barber Asphalt Pav. Co. v. Hunt*, 100 Mo. 22 ; *Silsby Manufacturing Co., Appellant, v. Allentown*, 153 Pa. St. 319 ; *City of Newark v. Bonnell*, 31 Atl. Rep. 408 ; see, also, *Kilvington and another v. The City of Superior*, 83 Wis. 222 ; *Perine C. and P. Co. v. Quackenbush*, 104 Cal. 684. It appears, however, that there was, in fact, actual competition in bidding for the construction of the bridge. The cost of the royalty was determined upon in advance, and notice of the fact was given to every person bidding or proposing to bid upon the work. All the bidders were, therefore, placed upon an equal footing ; and full competition was invited and permitted. Six different bids were actually made for the construction of the bridge, and the contract appears to have been let to the lowest responsible bidder. We think there has been a substantial compliance with the law in this respect, and the contract made for the improvement appears to be valid.

The judgment of the District Court will be affirmed.

All the Justices concurring.