HOLMES v. COMMON COUNCIL OF DETROIT.

MUNICIPAL CORPORATIONS—PUBLIC CONTRACTS—SPECIFICATIONS—
MONOPOLIES.

> The fact that material to be used in the construction of a
> pavement or other public work is in the hands or under the
> control of a single dealer, whether by reason of a patent or
> otherwise, does not preclude the specification of that material
> in a contract for such improvement to be let on competitive
> bidding.

Appeal from Wayne; Hosmer, Lillibridge, and Car-
penter, JJ. Submitted January 27, 1899. Decided May
23, 1899.

Bill by Frank B. Holmes and others to enjoin the com-
mon council and the board of public works of the city of
Detroit from confirming a certain paving contract. From
a decree for complainants, defendants appeal. Reversed.

*Warner, Codd & Warner*, for complainants.

*Charles Flowers* (*John J. Speed*, of counsel), for de-
fendants.

HOOKER, J. The law creating the board of public
works of the city of Detroit provides that all paving shall
be done "upon contracts and under specifications to be
prepared by such board and approved by the common
council," and directs that "the board shall advertise for
proposals to execute the work according to plans and
specifications, and the board may contract with the lowest
responsible bidder." 3 Laws 1873, Act No. 392, § 18.
The board adopted specifications for repaving its streets,
and these were approved by the common council. It was
apparently designed to have some uniform rule. These
provided that all brick should be of a quality to be ap-

proved by the board of public works, and equal to approved samples in its office, and that each bidder should state in his bid the kind of brick that his proposition was based upon, which should be of such kind as had been approved by the board of public works.   In December, 1897, tests were made under the direction of the board, and three kinds of brick were approved, viz., Nelsonville, Metropolitan, and Century.   On April 29, 1898, the board advertised for proposals for repaving Atwater and other streets according to these specifications, each bidder being requested to name in his bid a separate price on each of the three kinds of brick mentioned.   The complainants were bidders, as was also John McLaughlin.   His bid named the kinds of brick which he proposed to use.   The bid of the complainants did not, but was accompanied by a letter which stated that they proposed to furnish "paving block brick of established reputation, that have been tested by the city of Detroit in the recent test by your body, and also the common council, and which have demonstrated in that test, and also in use in different cities, to be equal at least to the Metropolitan, Century, and Nelsonville blocks; and we are prepared to enter into a contract, and guarantee these goods equal to those named."

The board of public works rejected the bid of Holmes & Strachan for the reason that it did not name the kind of brick, as mentioned in the advertisement and as required by the specifications, and reported the bid of McLaughlin, as the lowest bid, to the common council, accompanied with the proper contract for confirmation. The bid of Holmes & Strachan named a lower price than the bid of McLaughlin for which they would do the work. The object of the present suit on the part of complainants is to restrain the common council from confirming the McLaughlin contract.   The ground upon which this relief is asked is that the sale of the three kinds of brick in Detroit is controlled by one Stevens, who, as agent for the manufacturer, has exclusive authority in that market, and that there was therefore a monopoly, and no compe-

tition in the bidding. The circuit court so held, and the board was enjoined from executing the contract.

Complainants' proposition seems to be that, under the charter, no paving contract shall be let which involves the use of any material which, by reason of its exclusive production, is not subject to competition, or perhaps, more accurately, complainants' claim is that such contract cannot be made for the use of such material except when it has been subjected to a competition with some other material. This would result in some serious consequences. If such is the rule, the city may be denied the right to have the pavement that it wants, because some one is willing to furnish something else, that may be thought equally good, for a less price. One or two blocks of a street may be paved with Nelsonville brick, but, when it is desired to extend the pavement, they cannot take bids, and proceed to pave with the same, if some other brick can be obtained cheaper. It may be that the cheaper price is made by interested parties, at a loss, to injure a rival, or for some other ulterior purpose, or because of insolvency, or it may be untried brick, or it may happen that the competing brick is not likely to be thereafter obtainable for repairs. But this would make no difference; the city must be subjected to these dangers and inconveniences, because it can obtain a lower bid. Thus, a pavement would be likely to be of a variegated pattern. This doctrine, carried out to its logical consequences, would prevent a city from doing any public work after an intelligent and well-digested plan, and the harmony and beauty of public improvements would be impaired. Whenever any article that should be the subject of a monopoly should be found to enter into a building or other improvement, the contract would be void, and payment could be enjoined by any taxpayer, if complainants' claim rests on solid ground. In this age of improvement and competition, we should not hold that municipalities are denied the most modern methods and improvements, unless it is clear that they have been prohibited. Many valuable innova-

tions involve patents; others are introduced through agencies, as in this case, and they are therefore practically controlled by one person or firm. Again, some kinds of stone come from a single quarry; limes and cements differ in quality, and some may not be safely used; and in many instances the superiority of a given article is generally recognized. In this instance the fact that the Nelsonville brick are handled by a single agent has no especial significance, for back of the agent is the principal; and it goes without saying that he fixes the price, and has his monopoly, whether he has one agent or more.

The gist of the complainants' claim is that the city cannot specify the brick or other material made and controlled by one manufacturer, but must open the proposed improvement to competitors, and submit to the consequences of competition. It is to the interest of the greater number of manufacturers to have such a rule adopted, yet it is not a rule that private persons adopt in their own matters, for obvious reasons. This departure from such business principles is based upon the danger of supposed venality of public officials. The consequence is that, when a public work is to be undertaken, those having it in charge are seldom left to conduct their negotiations, make the contracts, and answer to the public for a faithful performance of duty. Every one who has anything to sell insists on being heard; one accuses another of bribery; the board having the matter in charge, and its individual members, are accused of corruption; and after the award the work is delayed by litigation and injunctions, to the great inconvenience and cost of the taxpayers, and almost uniformly without any good result. So prevalent are these practices that they have become most serious obstacles to public improvement, and prolific sources of slander and vituperation, until many of our best citizens refuse to give to municipalities the benefit of their services, lest they be subjected to such charges. These things are so common that we may properly take notice of them, and we may well doubt a construction of

a law which shall encourage them and produce such re-
sults. A more sensible view to take would seem to be
that those charged with the making of an improvement
should determine definitely what is wanted, and then ad-
vertise for bids, and let the contract to the lowest respon-
sible bidder, leaving him to procure the material required
as best he may. Such is the view entertained by many
eminent jurists. There are others who have thought it
necessary to eliminate every element of monopoly, in a
vain effort to prevent any corruption whatever, and per-
mit the use of no materials which could not be bought in
the open market, or at least from competitive bidders.
Such a case is *Fishburn* v. *City of Chicago*, 171 Ill. 338
(39 L. R. A. 482, 63 Am. St. Rep. 236), where it was
held that specifications could not lawfully restrict bidders
to the use of one kind of asphaltum, which was produced
by one concern. The strongest argument of that case is
the following, which probably states the merits of the
question as strongly as it can be stated :

"But it may be said that cities, in the construction of
public improvements, ought to have, as have individuals
in the construction of private structures, the right to select
for use the article or substance best fitted and adapted to
the purpose, and that to deprive the public of the right to
select and use such superior articles is opposed to public
policy, and positively disadvantageous to the public.
The force of this argument must, of course, be admitted;
but, upon reflection, it is readily seen it is not necessary
to foster and create a monopoly, and prevent competition
in the letting of public contracts, by providing in ordi-
nances that a certain substance or article, and no other,
shall be used. If it be the judgment of the city council
that the most suitable and best material to be used in any
contemplated improvement is the product of some partic-
ular mine or quarry, or some substance or compound
which is in the control of some particular firm or corpora-
tion, the ordinance might be so framed as to make such
production, substance, or compound the standard of
quality and fitness, and to require that material equal in
all respects to it should be employed. An ordinance mak-
ing it indispensable that an article or substance in the

control of but a certain person or corporation shall be used in the construction of a public work must necessarily create a monopoly in favor of such person or corporation, and also limit the persons bidding to those who may be able to make the most advantageous terms with the favored person or corporation. If all the ordinances adopted by the city council of the city of Chicago providing for the paving of streets and public places in the city should select the stock in trade of a particular firm or corporation as the only material to be used in making such street improvements, the evil would be intolerable; and, if they may lawfully select such article in one ordinance, it cannot be unlawful to make it the settled policy of the city that material for paving streets shall be purchased of but one seller. Because of the error of the court in ruling the proffered testimony was inadmissible, the judgment must be reversed, and the cause remanded."

This case seems to rest on Illinois decisions.

We are cited to the case of *Dean* v. *Charlton,* 23 Wis. 590, where it was held:

"Where a city was empowered by its charter to improve streets at the expense of adjoining lot owners, but required to let all such work to the lowest bidder, it could not contract for laying a pavement at the expense of such lot owners, the right to lay which was patented, and owned by one firm."

It is obvious that a patented article is much more certain to be the subject of a monopoly than brick manufactured from certain clay and by certain parties, and therefore much more likely to require the application of the rule contended for. Yet this court has held that such may be specified by cities. *Attorney General* v. *City of Detroit,* 26 Mich. 263.

Counsel seek to draw the line at patented articles; but we see no distinction between brick made by the Nelsonville company under patents, and brick made by the same company, but not under patents. In the concurring opinion of the late Chief Justice CHRISTIANCY in the case cited, he places a construction upon such laws as that under discussion which commends itself to our approval. He says:

"When the pavement of a street is in contemplation, there are two kinds of competition which it is very desirable to create among those who may wish to undertake the work: *First*, that between the different kinds of pavement, or those prepared to engage in putting them down; and, *second*, that between parties prepared to put down the same kind. It is the latter species of competition only which the charter requires the city officers to take measures to secure, and it is for this purpose only that it requires publication of the notice, plans, and specifications. * * * But those bids only which had reference to the same particular kind, and to the same specifications, could be considered as competing bids, for the purpose of determining who was the lowest bidder, within the meaning of the charter."

In *Kilvington* v. *City of Superior*, 83 Wis. 222 (18 L. R. A. 45), it was held:

"The fact that the mode of building the crematory was patented did not render a contract therefor invalid, under section 921, Rev. Stat. (requiring it to be let to the lowest bidder), where the entire work was done at the general expense of the village, and the use of the patent was offered to the village and to all contractors at a fixed price, and there was free competition as to everything else. *Dean* v. *Charlton*, 23 Wis. 590, distinguished and limited."

The court said:

"Upon the authority of *Dean* v. *Charlton*, 23 Wis. 590, it is contended that, as the mode of building the crematory was a patented one, the contract was void, on the ground that there could not be fair competition in bidding for the work, which by the charter was required to be let to the lowest bidder. Rev. Stat. § 921. The case of *Dean* v. *Charlton* was decided by a divided court, and there was a vigorous and able dissenting opinion by Chief Justice Dixon. The legislature subsequently validated the assessments so held void in that case, and in *Mills* v. *Charleton*, 29 Wis. 400 (9 Am. Rep. 578), and *Dean* v. *Borchsenius*, 30 Wis. 236, the validity of this legislation was sustained. Since that time the direct question involved in that case, which was in respect to assessments against abutting lots for paving the street, has not been before the court; but in *Dean* v. *Charlton* the majority

of the court, after commenting upon the case of *Harlem Gaslight Co.* v. *Mayor, etc., of New York*, 33 N. Y. 309, expressly disclaimed deciding whether the city might not have contracted for laying such pavement at its own expense, under its general municipal powers, which is really the question here presented. In view of the legislation which followed *Dean* v. *Charlton*, and the fact that it was decided by a divided court, and the general tenor of subsequent decisions, and the further fact that patented methods and processes now enter so largely into various classes and kinds of public work, we are not disposed to extend the rule of that case beyond the particular point there decided. In *Hobart* v. *City of Detroit*, 17 Mich. 246 (97 Am. Dec. 185), and *Motz* v. *City of Detroit*, 18 Mich. 515, decided at about the same time, a contrary conclusion was reached; and in *Nicolson Pavement Co.* v. *Painter*, 35 Cal. 699, and *Burgess* v. *City of Jefferson*, 21 La. Ann. 143, the rule of the majority of the court in *Dean* v. *Charlton* was sustained. Since then, in *Re Dugro*, 50 N. Y. 513, the question has been decided in conformity with *Hobart* v. *City of Detroit*, *supra*, and other like cases; and in *Yarnold* v. *City of Lawrence*, 15 Kan. 126, 131, Brewer, J., notices the diversity of judicial opinion on the question, and is inclined to favor the views of the courts of Michigan and New York. *Baird* v. *Mayor, etc., of New York*, 96 N. Y. 567.

"In the present case there was a definite, well-settled price for the patent and specifications, at which it was held and offered to the city and all contractors, which would limit the recovery of the patentee, so that in fact there was free competition for the work and materials, and all else except the patent. The city had the benefit of all the competition of which the nature of the work admitted; and in such cases, where the entire work is done at the general expense of the city, the statute ought not to be so construed as to exclude the city from availing itself of desirable patented works or improvements, as to which there is but one price, and for which there can, in the nature of the case, be no competition, and when for performing the work and furnishing materials the advantage of competition is secured. While the rule of *Dean* v. *Charlton*, 23 Wis. 590, may be upheld as applied to assessments charged against abutting lots, where the lot owners have the right secured to them to construct in front of their property the improvements for or in which a

patented method or process is used, we cannot see that there is any good reason to hold that the statute applies to the patented mode or process, when in respect to all else the statutory requirement of competition is secured. Under any other theory a municipal corporation would be obliged to forego the purchase and use of all patented implements, modes, or processes,—a result which we cannot think the legislature contemplated."

The case of *Mayor, etc., of Newark* v. *Bonnell*, 57 N. J. Law, 424 (51 Am. St. Rep. 609), is in point, also.

The case of *In re Dugro*, 50 N. Y. 516, sustains the authority to use patented articles. In the opinion it was said:

"Section 104 of the act is relied upon as a limitation upon the powers of the common council, to the extent of a prohibition to undertake any work, or order or direct the making or paving any street, in a manner or with a material which will not admit of competitive bids or proposals. It requires all work to be done and supplies to be furnished by contract when the expenditure will exceed $1,000, and directs all contracts to be made or let after an advertisement for proposals, and to the lowest bidder. The statute was complied with, in that the proper officers of the city did advertise for bids or proposals for paving the street, and the contract was let to the only bidder, and at the price named in the bid. The objection is that the Nicolson pavement was patented, and the right to lay it was in a single person or corporation, and that, therefore, the advertisement being for bids to pave the street with that particular pavement, there could be no competition, and the form of advertising for and receiving bids, and acting upon them, was but a form, and was not, and could not be, a compliance with the act looking to competition; and it is claimed that the contract based upon the proceedings was void, and the assessment for the work therefore illegal.

"It is urged, because a statute prescribing general rules for the exercise of the powers granted to the municipal corporation are not, in all their detail, applicable to every case that may arise, that, to the extent they cannot be applied, the powers are annulled and cannot be exercised. This would be to give undue effect to the act prescribing the forms of procedure, and modal in its character, at the

expense of the general grant of power. Whether the corporate authorities could or should have known that there could be no possible competition for the work (if such was the fact, which is not entirely certain), and, knowing that, could or should have made a contract without advertising for bids, need not be considered. There is no pretense of fraud, or that the contract, as made, was not a provident and proper contract, and reasonable and right in all its terms and provisions, so that the form of advertising and receiving bids cannot vitiate it, even if no such procedure was necessary. The general rule is—and this case does not form an exception—that statutes prescribing forms of procedure, and providing for the orderly conduct of proceedings by public officers or bodies, are only obligatory to the extent and in cases to which they are by their terms applicable. The legislature cannot be presumed to have intended to declare that no power should be exercised, or work done, or supplies furnished, unless of a character that would admit of competitive bids. The grant of power was for public purposes, and the discretion vested in the common council was in the interests of the public; and neither the public nor the parties to be benefited by local improvements can be deprived of the benefit of this discretion, or the right to the best or most improved pavements, because full effect cannot in a particular case be given to an act designed for another purpose, to wit, to regulate the exercise of, and not to limit, the power. In other cases in this court a like statute, intended to accomplish the same purpose, that is, the performance of work and the furnishing of supplies at the lowest price and on the most favorable terms, although sufficiently broad in its terms to include the contracts and the services in question, was held not applicable to, and therefore as not embracing, them. *People* v. *Flagg,* 17 N. Y. 584; *Harlem Gaslight Co.* v. *Mayor, etc., of New York,* 33 N. Y. 309.

"This case is not within the precise principle ruled in those cases, but it is quite analogous, and much of the reasoning of the judges who then spoke for the court is entirely applicable here. A thing within the letter is not within the statute unless within the intention. The act of 1870 can have full effect in cases to which it can be applied, but, if there are cases to which it could not be reasonably applied, they are not within the intention, and therefore not within the statute. It seems to be absurd to

say that all powers and all authority is by necessary implication taken from the municipal authorities, except such as can be exercised in strict conformity to this one provision of law; that this section of the law of 1870 is to be the touchstone to determine the limit and extent of the powers vested in the common council, and that all other acts must conform to it. It should rather be interpreted with respect to the other statutes to which it is ancillary. The decisions of the courts in Wisconsin are adverse, while the Michigan courts are in accord with the views now expressed. If, as alleged, there could be no competition for the paving with the Nicolson pavement, the common council had nevertheless the power to cause the street to be paved with it; and it is simply a case not within the statute, although the words are broad enough to include it. It constitutes one of the necessary exceptions to it. No other question was presented upon this appeal; the counsel, in terms, limiting the discussion to the operation and effect of the provisions of the act of 1870, requiring certain contracts to be given to the lowest bidder after an advertisement for proposals."

In *Fones Hardware Co.* v. *Erb*, 54 Ark. 651 (13 L. R. A. 353), the view entertained by Chief Justice CHRISTIANCY was approved. The Arkansas court said:

"When a contract to build a bridge is to be let, there are two kinds of competition that may arise: *First*, that between persons desiring to build different kinds of bridges; and, *second*, that between those desiring to build the same kind. And, as was said by Judge CHRISTIANCY in discussing a provision similar to that under consideration, the bidding which it contemplates is of the latter kind,—bidding for the same particular thing, to be done according to the same specifications; for, says he, no bids for different kinds of work, and referring to different specifications, could be recognized as coming in competition with each other, for the purpose of determining the lowest bid, within the requirement of this section, without opening the door to the same corrupt combinations and furnishing facilities for the same fraudulent practices which it was the purpose of this provision to prevent. *Attorney General* v. *City of Detroit*, 26 Mich. 263."

This rule applied to patented articles should extend to any desirable article, although, from the course of busi-

ness, its manufacturers may have the exclusive sale of it. It is not a question of who makes or sells it, but of quality. In this case the complainants seek to apply a new regulation, viz., that in all such cases the city must be satisfied with some other article alleged to be equally good. They not only did not comply with the specifications, by naming one of the kinds of brick specified, but bid upon a brick the name of which was not divulged, and they now ask relief upon the ground that such a bid should have been considered. Municipal improvements afford an opportunity for corruption and jobbery, and the public opinion that it is not uncommon may be justified. This is perhaps unavoidable, but, whether it is or not, we think the remedy is not that suggested, viz., to deprive the cities of the power to get what is desired, and compel them to take what is not wanted, or nothing. We think the law is complied with, in the absence of actual fraud or corruption, when specifications are submitted to competitive biding, although some article is specified which, by reason of a patent or circumstances, is in the hands or under the control of a single dealer.

The decree will be reversed, and the bill dismissed, with costs.

GRANT, C. J., MOORE and LONG, JJ., concurred. MONTGOMERY, J., did not sit.