JOHN A. SAUNDERS, Appellant, v. THE CITY OF IOWA CITY, GEORGE W. BALL, Mayor, A. J. HANLEY ET AL., Members of the City Council of said City, and WILLIAM HORRABIN, Appellees.

**Contracts for street improvement:** USE OF PATENT PAVEMENT: COMPETITIVE BIDDING: INJUNCTION. A contract for a street improvement which is let to the lowest bidder is not in violation of the statute relating to competitive bidding by reason of the fact that the council, in its resolution authorizing the improvements and its advertisement for bids, required the use of a patented pavement.

*Appeal from Johnson District Court.*— HON. O. A. BYINGTON, Judge.

THURSDAY, APRIL 11, 1907.

SUIT in equity to enjoin defendants from making certain improvements by paving a street in defendant city, from letting a contract for said paving to defendant Horrabin, and from assessing the cost of said improvement to abutting property owners. The trial court dismissed the petition, and plaintiff appeals.— *Affirmed.*

*Baldwin & Fairchild* and *Read & Read,* for appellant.

*W. J. McDonald, Bailey & Murphy,* and *M. J. Wade,* for appellees.

DEEMER, J.— The question of paving what is known as " Iowa Avenue " in the city of Iowa City became a matter of public concern, and the city council of that city undertook an investigation as to the best material to be used for that purpose. Pursuant thereto it instructed its engineer to make an investigation, and as a result thereof he recommended the use of what is known as " Bitulithic pavement." Brick was discarded for various reasons which need not be enumerated, and this left nothing but asphalt or bitulithic for use in improving the street. After the engineer had made his report a majority of the owners of property abutting upon the street petitioned the city council, asking it to curb and pave the thoroughfare, and recommended that the bitulithic pavement· be used. Plaintiff, however, did not join in this petition. Pursuant to the petition the council passed a resolution for the pavement of the street, and directed its civil engineer to prepare plans and specifications for the work, and the city clerk was authorized to advertise for bids for paving the avenue with Warren Bros.' bitulithic pavement. This was done, but before any bids were received the Warren Bros. Company filed with the city council the following statement:

To the Mayor and City Council, Iowa City, Iowa. Gentlemen: Inasmuch as it is deemed advisable by the

proper authorities that certain streets in the city of Iowa
City, State of Iowa, should be improved with Warren's bitu-
lithic pavement, and inasmuch as the construction of said
pavement requires the use of certain patented processes and
compounds, and inasmuch as competitive bidding in the let-
ting of contracts for street improvements is deemed advisa-
ble, in order to provide for such competitive bidding, and at
the same time secure the adoption of Warren's bitulithic
pavement as the kind of pavement to be constructed in such
streets as may hereafter be determined, the undersigned,
Warren Bros. Company, as owners of all patents and pro-
cesses covering the laying of said bitulithic pavements,
hereby propose and agree for the consideration hereafter
named to furnish to any bidder to whom a contract may be
awarded to pave any street or streets in the city of Iowa City
with Warren's bitulithic pavement, and who shall enter into
a contract with such surety or sureties as may be required by
said city of Iowa City, the following materials ready for use,
coupled with a free license to use any or all patents owned,
or which may hereafter be owned by Warren Bros. Company,
necessary to lay said pavement:    (1) The necessary road-
way mixture of the wearing surface having a thickness of
two (2) inches after compression, prepared under the pat-
ented process of Warren Bros. Company, and delivered hot
in the wagons of the contractor and the bitulithic mixing
plant located in the city of Iowa City.    (2) The right to
use any and all patents owned or controlled by Warren Bros.
Company, which are necessary to be used in the laying of
such pavement.    (3) The bituminous flush coating cement
and stone chips for coating the wearing surface delivered on
wagons of the contractor at the bitulithic mixing plant lo-
cated as above.    (4) We will also furnish to the successful
bidder, or to the city, at our expense, an expert who will give
proper advice as to the building of such pavement.    (5) We
will make at least two examinations daily at our laboratory
of the mixtures as delivered on the street to see if uniformity
has been accomplished in the mixture and construction, and
make reports thereon to the proper city authorities, said sam-
ples to be sent prepaid to the laboratory of Warren Bros.
Company, Potter street, East Cambridge, Mass., by the city
or contractor.    The price at which this service is offered to
any and all contractors who make a bid on Warren's bitu-

lithic pavement in the city of Iowa City, State of Iowa, is $1.45 per square yard of finished pavement. Respectfully submitted, Warren Bros. Company, Albert C. Warren, Vice President.

This statement was dated May 15th, but was not filed, as we understand it, until May 26, 1905. The time fixed for hearing objections to the resolution for paving was May 5, 1905, and before that date plaintiff and others filed protests against the improvements, which were finally overruled on May 5th, and at that time the resolution to pave with the bitulithic substance was passed. Pursuant to the advertisement for bids, six were filed, ranging from $1.96 to $2.16 per square yard. The bid of the Barber Asphalt Paving Company being the lowest, it was awarded the contract on June 23, 1905. By the terms of that contract the asphalt company was to begin work within fifteen days after the agreement became binding. As the Barber Company did not comply with this part of the contract, it was canceled on July 14, 1905, and the clerk was directed to readvertise for bids. This was done, and at the time fixed for the receipt of the second bids three were received ranging from $1.98 to $2.20 per square yard. Defendant Horrabin being the lowest bidder the contract was awarded to him, August 16, 1905. Thereafter the time given him for commencing the work was extended to April 15, 1906.

This action to enjoin defendant city and its council from entering into a contract with Horrabin and to declare any contract made with him void and for other purposes was commenced in July of the year 1905. Both the contract with the Barber Asphalt Company and with Horrabin provided that the paving be laid with Warren Bros.' bitulithic pavement, to be purchased from Warren Bros. Company, and mixed with Warren's Puritan brand No. 21 bituminous water-proof cement or bitulithic cement, the wearing surface to be spread with Warren's quick-drying bituminous

flush coat composition; and the contract with Horrabin also contained these provisions:

The several sizes of stone thus separated by the screen sections shall pass into a bin containing six sections or compartments. From this bin the stone shall be drawn into a weight box resting on a scale having seven beams, the stone from each bin shall be accurately weighed in the proposition which has been *previously determined by laboratory tests to give the best results,* that is, the most dense mixture of mineral aggregate, and one having inherent stability. From the weight bin each batch of mineral aggregate, composed of differing sizes accurately weighed as above, shall pass into a " twin plug " or other approved form of mixer. To this mixture shall be added a sufficient quantity of *Warren's Puritan brand No. 21 bituminous water-proof cement, or bitulithic cement,* to thoroughly coat all the particles. After rolling the wearing surface, there shall be spread over it while it is still warm a thin coating of *Warren's quick-drying bituminous flush-coat composition,* by making a suitable flush coat spreading machine. . . . As a condition precedent to the acceptance by the council of the work done under the contract, it is hereby stipulated and agreed that Warren Bros. Company must file with the city clerk a statement duly attested, setting forth the fact that they, the Warren Bros. Company, have furnished the contractor with a full and sufficient amount of the proper bituminous compounds and mixtures for properly building the amount of paving constructed under this contract; that they have made laboratory tests of the stone used in the bitulithic mixtures, and have given instructions to the contractor with reference to the mixing of stone and bituminous cement; that they have examined from time to time the mixture as it was prepared to be placed on the street; that they have exercised a general supervision over the bituminous construction of the pavement, and believe that the work has been well done and to their entire satisfaction; and that they have no claims against the city of Iowa City for furnishing such material, rendering such services, or the use of any patented device, process, or compound.

As will be observed the action was commenced before the contract with Horrabin was let, and the letting of the

contract, as well as the making of the improvement and the making of any assessment for the cost thereof, is sought to be enjoined, and the cancellation of the contract is also asked. Appellant relies on the following propositions:

(1) The defendant city was and is without jurisdiction or power to make the improvement in controversy, or to let the contract in controversy, or to assess any part of the cost of the improvement to abutting property, for the reason that the statute of Iowa and the ordinance of the defendant city are mandatory in requiring competition, and there was and could be no competition in the letting in controversy. (2) The defendant city was and is without power or jurisdiction to improve the street in question by paving with Warren Bros. bitulithic pavement, or to let the contract in controversy therefor, or to assess the cost of the improvement to abutting property, for the reason that the pavement specified was a patented process, the manufacture and laying of which was controlled by the letters patent, owned exclusively by the Warren Bros. Company, and therefore there was and could be no competition in the letting of said improvement as required by the statute and ordinances regulating the same.

It is conceded that the Warren Bros.' bitulithic pavement is a patented process, and we have now for the first time to determine whether a city may, in improving its streets, make use of a patented process or substance. Upon no proposition is there such a decided and irreconcilable conflict in the authorities from other States as upon this. It is absolutely impossible to reconcile the cases, and the several courts have not always been consistent in their pronouncements upon the principles involved. Before going to the main proposition, it may be well to consider our statutes so far as they may be deemed relevant to the inquiry. By section 753 of the Code it is provided that the city council shall have the care, supervision, and control of all public highways, streets, and alleys, and shall cause the same to be kept open and in repair. By section 792, " cities shall have the

power to improve any street by paving and curbing the same or any part thereof, and to provide for the making and reconstruction of such street improvements, and to assess the cost to abutting property." And by section 813 it is provided that all contracts for the making or reconstruction of street improvements and sewers shall be let in the name of the city to the lowest bidder by sealed proposals upon giving notice for at least ten days by two publications in a newspaper published in said city, which notice shall state as nearly as practicable the extent of the work and the kind of materials for which bids will be received, when the work shall be done, the terms of payment fixed, and the time proposals shall be acted upon; but all bids may be rejected and new bids ordered. The ordinance of the defendant city closely followed section 813 of the Code, and is in almost the exact language of that statute. It has long been the policy of the State to secure competition in letting contracts for public supplies. Thus section 867 of the Code requires certain contracts on behalf of cities to be let to the lowest bidder. Boards of supervisors are also required in making contracts for the support of the poor to let to the lowest bidder. Section 2238. School boards must let contracts for repairs of schoolhouses to the lowest responsible bidder. Code, section 2779. And the board of control must let all contracts for supplies to the lowest bidders. Code Supp. 1902, sections 2727-a50 to 2727-a51. Other cases need not be enumerated, as enough is stated to show the policy of the State in this regard.

The broad claim is now made that where there can be no competition, as where there is a natural or artificial monopoly, no matter how created, whether, in the source of supply, by agreement, or because of a patent, the article thus monopolized cannot be used by the State or any of its instrumentalities, or by a city in the making of public improvements. Appellant will admit of no distinction as to the nature of the monopoly, and his counsel start out with the

proposition that all monopolies are odious in law, and no matter if that monopoly be created by act of Congress, as where it grants a patent, a city cannot use a patented article in making public improvements. Plaintiff admits, as he must, that the city council determines the nature of the pavement to be constructed in order that there may be intelligent bidding and the exercise of a choice as between good and bad substances for paving, but he says that no selection of a patented article may be made, no matter what its character. The admission involved in this statement is necessary, in view of our holding in *Coggeshall v. City of Des Moines,* 78 Iowa, 235, wherein it is said that the city must determine in advance of advertising for bids and letting the contract the character of the work and material of which the improvement is to be made. Within proper limits this determination is conclusive upon the courts in the absence of fraud or wanton oppression. *Morrison v. Hershire,* 32 Iowa, 272. But if the council has no authority to contract for the use of a patented or monopolized article, then, of course, its determination to use it is not conclusive, no matter what the motive of the officials selecting it. We are brought then squarely to the proposition — may a city in its resolution of necessity and conclusion to pave a street select a patented article or process? If it may not, then the trial court was in error in dismissing the petition. But if it may, then the case was properly decided. There are many cases *pro* and *con* on this proposition, and it is difficult to say where the numerical weight of authority is. We shall refer to some of the cases and to the views therein expressed during the course of this opinion, but before doing so, it is thought advisable to consider a matter of legislative construction, which is strongly relied upon by appellant. By the acts of the Twenty-Third, Twenty-Fourth and Twenty-Fifth General Assemblies, chapters fourteen, twelve and seven, respectively, cities had power to use any composition patented or otherwise, for the curbing and paving of

streets.   Thus the matter stood until the present Code was
adopted, when the language was changed so that the char-
acter of material which might be used was · left unde-
fined.   The commission appointed pursuant to chapter 115,
Acts 25th General Assembly, to revise and codify the laws
of Iowa, omitted that provision from its reports, but ac-
cording to its printed report (page 3 thereof), it did not,
in omitting the provision as to the use of patented arti-
cles, intend to change the meaning of the law.   See, also,
*Minneapolis R. R. v. Cedar Rapids R. R.,* 114 Iowa, 502;
*Eastwood v. Crane,* 125 Iowa, 707.

Under the Code as it now stands the city counsel shall
declare the advisability or necessity of paving, and state the
kind of material proposed to be used and the method of con-
struction.   See section 810.   But it is said that the act as it
now appears is not the same bill as that recommended by the
Code- Commission, and this is no doubt true.   It seems that
the bill which was finally enacted was a committee substi-
tute, but in so far as the provision now under consideration
is concerned, there is no material departure from the lan-
guage used by the Code Commissioners in the bill recom-
mended by it.   Compare section 810 of the Code with section
19 of the proposed act found on page 162 of what is known as
the " Black Code."   As the matter now stands there is no
express permission to use patented articles; nor is there any
prohibition save as such inhibition may be found in section
813 of the Code with reference to letting the work to the
lowest responsible bidder.   It is impossible to do more than
guess at the legislative intent.   With reference to the Code
commissioners' report, the holding generally has been that in
the absence of clear indications to the contrary no change in
the laws were intended, even if there be a change in the lan-
guage used, for the commission did not understand it to be
within its province to change the law as it then existed.   See
Report of Commission, pages 1 and 3, and cases hitherto
cited.   Of course the language used in the rewriting of the

laws whether of the Code Commission or of the Legislature in acting upon its report, if clear and unambiguous, must control, for the intent of the lawmaking body is to be found in the language used by it. Either one of two purposes may have been in mind in dropping out the provision with reference to the use of patented articles. This may have been done because the Legislature thought it unwise to permit municipalities to make use thereof in the construction of public improvements. If it had so thought, and that matter was in mind, it would have been easy to have prohibited the use thereof expressly, instead of leaving the matter to intendment in virtue of a subsequent statute with reference to letting the work to the lowest bidder.

On the other hand, in giving to the city council power by section 810 of the Code to select the kind of material to be used and the method of construction, it may have thought that the provision as to patented articles was surplusage, and that section 813 of the Code regarding bids had reference only to those cases where competition was possible in the materials to be used. One theory is just as tenable as the other, and there is nothing to indicate that the Legislature in dropping from the statute the words " patented or otherwise " intended to prohibit the use of patented or monopolized articles in works of public improvement. So that we must determine whether the city had power under section 810 of the Code to select a patented article, and provide the method of construction in passing its resolution for the paving of Iowa avenue. It must be remembered in this connection that a majority of the property owners petitioned for the use of this particular kind of pavement in asking that the avenue be paved, and that the council's act in selecting this particular kind of pavement was regular and free from favoritism, fraud or oppression; moreover, there was as much competition between bidders as it is possible to have where a patented article is used. There is a line of cases which broadly hold that where an article is monopolized,

no matter whether legally or not, as under a patent, and the statute provides that work of public improvement shall be let to the lowest bidder, such monopolized article cannot be used, for the reasons, first, that monopolies are odious in law, and second, because without free competition there is always opportunity for favoritism, fraud, graft and oppression. The leading case on this subject is *Dean v. Charlton,* 23 Wis. 590 (99 Am. Dec. 205). This case has been followed in other States. See *Siegel v. Chicago,* 223 Ill. 428 (79 N. E. 280); *Monaghan v. City* (Ind. App.), 75 N. E. 33 (Id., 76 N. E. 424); *Nicolson v. Painter,* 35 Cal. 699; *State v. Elizabeth,* 35 N. J. Law, 351; *Burgess v. City,* 21 La. Ann. 143; *Fones v. Erb,* 54 Ark. 645 (17 S. W. 7, 13 L. R. A. 354); *Fineran v. Central Co.,* 76 S. W. 415 (116 Ky. 495); *Smith v. Syracuse Co.,* 161 N. Y. 484 (55 N. E. 1077); *Barber Co. v. Gogreve* (Ala.), 5 South. 853; *Diamond v. City,* 89 Minn. 48 (93 N. W. 912, 61 L. R. A. 448).

On the other hand, many courts have held that a statute providing that work shall be let to the lowest bidder does not prejudice the use of patented articles. The leading case on this side of the question is *Hobart v. Detroit,* 17 Mich. 246 (97 Am. Dec. 185), opinion by Cooley, J. This has been followed in *State v. Shawnee Co.,* 57 Kan. 267 (45 Pac. 616); *Holmes v. Council,* 120 Mich. 226 (79 N. W. 200, 45 L. R. A. 121, 77 Am. St. Rep. 587); *In re Dugro,* 50 N. Y. 513; *Rhodes v. Board,* 10 Colo. App. 99 (49 Pac. 430); *Swift v. City,* 180 Mo. 80 (79 S. W. 172); *Mayor v. Flack* (Md.), 64 Atl. 702; *Field v. Barber Asphalt Co.* (C. C.), 117 Fed. 925, (Id. 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142); *Bunker v. City* (Kan.), 87 Pac. 884; *Bye v. Atlantic City* (N. J. Sup.), 64 Atl. 1056; *Mayor v. Bonnell,* 57 N. J. Law, 424 (31 Atl. 408); *Schuck v. City,* 186 Pa. 248 (40 Atl. 310); *City of Raymo,* 68 Md. 569 (13 Atl. 383); *Yarnald v. Lawrence,* 15 Kan. 126, opinion by Brewer, J.; *Hastings v. Columbus,* 42 Ohio St. 585;

*Monaghan v. City* (Ind. App.), 76 N. E. 425; *Perine v. Quackenbush,* 104 Cal. 684 (38 Pac. 533).

All the cases on either side of this proposition seem to be collected in the valuable notes found in 5 L. R. A. (New Series) 680, and 18 L. R. A. (Old Series) 45. In each of the leading cases above cited there was a strong dissenting opinion, and in view of the decided conflict in the opinions of able courts and judges it is manifest that cogent reasons may be given in support of either conclusion. The Wisconsin court has recently limited the rule announced in Dean v. Charlton to the particular point there decided, and held that cities may contract for the building of patented crematory furnaces, where the contract for doing the work was let to the lowest bidder. Dean v. Charlton was explained, and the conclusions there reached sustained, because the charge was to be made upon abutting property, the owners of which had the right to construct the improvement in front of their own properties. See *Kilvington v. Superior,* 83 Wis. 222 (53 N. W. 487, 18 L. R. A. 45). In this latter case it is said: "Under any other theory a municipal corporation would be obliged to forego the purchase and use all patented implements, modes, or processes — a result we cannot think the Legislature contemplated." Under our statutes the abutting owner has no power to construct the pavement himself, and for this there is very good reason. It is important that in the making of such public improvements as street paving there shall be some harmony in design, in wearing qualities, and in contour. A particular kind of pavement for a designated district is less expensive than several kinds for the same district. Again, the kind of material to be used and the method of construction is wisely left to the city council, and its conclusion within proper limits is binding in the absence of fraud or oppression. Where the materials are determined upon and the method of construction fixed, the entire work is done under the direction of public officials, and is made a consistent whole.

No abutting owner has power to construct the pavement in front of his lots.   He must abide by the decision of the city council so long as its acts within the scope of its authority and is guilty of no fraud or oppression.   Other courts holding to the Wisconsin doctrine have been forced to recede from the bold proposition that patented articles cannot be purchased by public boards or officials where contracts must be let to the lowest bidders.   See *Perine v. Quackenbush,* 104 Cal. 684 (38 Pac. 533) ; *Bye v. Atlantic City* (N. J. Sup.), 64 Atl. 1056; *Mayor v. Bonnell,* 57 N. J. Law, 424 (31 Atl. 408).   We shall not take the time and space necessary to review the cases which might be cited upon the propositions collaterally and directly involved.   It is enough to consider the case as it is presented with reference to its peculiar facts, and to announce a rule which is decisive thereof.

It must be remembered that the monopoly in this case, if one exists, was created by the government.   It is not one which is odious in the eye of the law, for it was granted by the public as a stimulus to inventive genius, and to preserve to the individual the fruits of his discovery.   That thought may be stimulated for the public good, new and useful inventions are patentable, and the discoverer is given the exclusive right to use his invention for a limited period of time. While there are artificial monopolies which are odious in the eye of the law, it seems clear that one created by the government for the purpose of fostering useful discoveries is not such as courts should discredit.   Take this case as an example.   The patents for paving substances and materials cannot be used for many other purposes.   The field for use is limited, and if cities and towns may not avail themselves of new discoveries in this line, little encouragement will be given to invention, and we must depend upon the cobblestones of our forefathers.   Surely the Legislature did not intend this result when it made the provision for competitive bidding.   It would have been easy to have prohibited the

use of patented material in the construction of pavements had the Legislature so willed. As it did not do so, such prohibition should not be inferred from the fact that contracts are to be let to the lowest bidder. What is meant by this statute is that there must be competition where competition is possible. This is the construction usually given to statutes which are not prohibitive in character. If the material, or part of it, is monopolized by patents, there cannot, of course, be absolutely free competition, and where that is impossible, it surely was not the intent of the Legislature that all improvements should cease, or that antiquated methods only should be adopted. All that the law means, as we view it, is that in all cases where competition may exist, such competition shall be allowed by receiving bids, and in the absence of express prohibition there is nothing to warrant the exclusion of patented articles. The provision as to bidding regulates the exercise of a power and was manifestly not intended to limit it. And neither the public nor the parties benefited by the improvement should be deprived of the best and most approved pavements because full effect cannot be given to an act passed to regulate the exercise of a power expressly granted by other statutes. In other words, the provision as to competitive bidding has reference only to those cases where there may be competitive bidding and not to cases where some of the articles which enter into the work may be in the hands of particular individuals. Courts have never willingly blocked the wheels of progress. They should, and have at all times sought to, encourage and stimulate endeavor and to foster individual initiative, and while a great conservative force in government they do not consciously stand in the way of either mental or material advancement. The statute providing for letting a work of public improvement to the lowest responsible bidder was enacted to secure competition, to prevent fraud and defeat graft. It was enacted to remove as far as possible all favoritism and to secure the performance of public work at the lowest possible price;

but it was not intended thereby to impose upon individuals the use of an article simply because it was old, nor to thrust upon the people something that was inferior and antiquated simply because there might be competition as to that, but not in a newer and superior article. The statute does not say that no contract shall be let if there be but one bid, nor that a bid shall be rejected because it includes the use of a patented article. This result is claimed by construction. An elementary rule in the construction of statutes is that they shall be given a reasonable and not an arbitrary interpretation. When this is done, but one result, as we think, can be reached. This is an age of improvement and of progress, and courts should do nothing which will deny municipalities the right to use the most modern methods and improvements unless it is clear that the Legislature so intended.

There may be a monopoly, natural or artificial, in many of the substances which enter into a pavement. Thus there may be but one bank of sand which is available, or there may be a labor union which fixes the price of all work, or there may be patented machinery for mixing the cement, and in such cases surely no one would contend that no improvement could be made because, forsooth, no competitive bids may be made. We are well satisfied with the reasoning of Judge Cooley in the *Hobart* case, *supra*, and without quoting from his opinion, we adopt the reasoning thereof. as being the true solution of the problem. But it is not true that there may not be competition in a patented article. This case is a demonstration that there may be. Competitive bids were received, which were not the same, but varied as above stated. The Warren Bros. Company agreed to furnish its patented material at a flat price to all bidders. The proposition was filed with the city council, and the price named. Bidders knew just what they would have to pay for the material, just as they might have known what they would have to pay for brick, sand, and cement had the pavement been made of brick. We have already set out the proposi-

tion, and need not repeat it here.    Under the great weight of authority the statute was sufficiently complied with, and there was competitive bidding.    See *Monaghan v. City; Bye v. Atlantic City,* and *Hastings v. City, supra; Mayor v. Flack* (Md.), 64 Atl. 702; *State v. Board,* 57 Kan. 267 (45 Pac. 616); *Bunker v. City* (Kan.), 87 Pac. 884.    Quotations from the opinions in these cases are unnecessary as they are readily accessible and fully cover the point here decided.

The city council adopted the particular pavement after full investigation, and with the best light it could get upon the subject.    Its motives are. nowhere questioned, nor its purposes challenged.    So far as shown, it acted with good business judgment and in full accord with the wishes of a majority of the abutting property owners.    There is no claim of fraud and no implication of bad motive, and in our opinion there was all the competition which was necessary to justify the letting of the contract.    The testimony shows that while there are other pavements similar to the Warren Bros., none are so good and none so impervious to water and the action of the elements.    The trial court found this to be true, and with its conclusion we are agreed.    Much more might be said in support of the conclusion of the trial court, but we have said enough to indicate our views, and as this opinion has already grown too long, we forbear any further discussion.

The decree is right, and it is *affirmed.*