FORD, APPELLANT, *v.* CITY OF GREAT FALLS, RESPONDENT.

(No. 3,248.)

(Submitted October 26, 1912.    Decided November 11, 1912.)

[127 Pac. 1004.]

*Cities and Towns—Pavement of Streets—Use of Patented Material—Special Assessments—Property of United States Exempted—Powers of Council—Public Contracts—Competitive Bidding.*

Cities and Towns—Public Work—Power of Council—Statutes.

1.   Section 3369, Revised Codes, declaring that a city or town council is authorized to provide by ordinance "a system for doing any or all work upon the streets," *etc., held,* permissive and not mandatory, and under it the council is left free to provide that all street work shall be let by contract, or to elect to 'do it itself through a committee, board or designated officer, or to pursue any plan which best meets the exigencies of a particular case.

Same—Special Assessments—United States Property Exempted.

2.   The constitutional provision that a state shall not impose any taxes upon property therein belonging to the United States includes special assessments for street improvements.

Same—Special Assessments—Manner of Paying Cost of Improvement Fronting Exempted Property.

3.   Where property belonging to the federal government abuts on a street for the purpose of paving which a special improvement district is created; the city may devote its street fund or any money in its treasury not otherwise appropriated to the payment of that portion of the improvement which, but for its exemption from such impositions, would be properly assessable against such property.

Same—Use of Patented Material—Competitive Bidding.

4.   The city council incorporated in a resolution ordering the paving of a street, as well as in the call for bids, the requirement that in the construction of the pavement certain patented processes and compounds should be used; the company controlling the patent agreed that the cost of such material (constituting only a part of the gross cost of the improvement) should be the same to all bidders; in other respects, *i. e.,* cost of labor, other material, *etc.,* entering into the contract, the principle of free competition was retained. *Held,* on appeal from an order refusing an injunction asked for on the ground that the proceedings were void because violative of section 3278, Revised Codes, providing for competitive bidding on public contracts, that the action of the district court was correct.

Same—Public Work—Contract—Competitive Bidding.

5.   The requirement of section 3278, Revised Codes, that all municipal work necessitating the expenditure of a sum in excess of $250 must be let by contract to the lowest responsible bidder, includes expenditures made from the general revenues of a city as well as from funds derived from special assessments.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by R. S. Ford to enjoin the City of Great Falls. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. E. L. Bishop,* and *I. W. Church,* for Appellant, submitted a brief and argued the cause orally.

It is claimed by appellant that the resolution referred to in the complaint, and the proposed contract pursuant thereof, which it is sought by this action to enjoin, conflict with section 3278 of the Revised Codes, providing that "all contracts for work or for supplies or material for which must be paid a sum exceeding two hundred fifty dollars, must be let to the lowest responsible bidder, under such regulations as the council may prescribe," for the reason that the provision contained therein for the laying of bitulithic pavement, the exclusive right to make, use and sell to others to be used, is owned and controlled by Warren Brothers Company, creates monopoly, and prevents the competition intended to be secured by the provisions of said section. The general principle involved in this contention is stated in 28 Cyc., page 1026, as follows: "Under a provision that a contract be let to the lowest responsible bidder, it has frequently been held that the city, in its specifications, may not prevent competition by restricting the use of material to that manufactured by a particular firm." Citing in support thereof, California, Illinois, Indiana, Kansas, Louisiana, New York, Ohio, Pennsylvania and Wisconsin. "Other cases, however, modify the doctrine and hold that the city may, in good faith, avail itself of superior material, notwithstanding such material is a product of exclusive manufacture." (Citing Michigan, Missouri and New Jersey.) There is much conflict of authority among the earlier cases upon this subject, resulting, to some extent, from the divergent views expressed by the supreme court of Wisconsin, in *Dean* v. *Charlton,* 23 Wis. 590, 99 Am. Dec. 205, and by the supreme court of Michigan, in *Hobart* v. *Detroit,* 17 Mich. 246, 97 Am. Dec. 185, decided about the same time, and in each of

which there, was a dissenting opinion. The cases decided up to January, 1906, supporting these different views are carefully collected and cited in *Monoghan* v. *Indianapolis,* 37 Ind. App. 280, 76 N. E. 424. Inasmuch as these earlier conflicting decisions are based on varying statutes and facts, we shall confine ourselves to the later cases which have been decided upon the same or very similar statutes, and the same or very similar states of fact, many of them involving the same or very similar contracts for bitulithic pavement, owned and controlled by Warren Brothers Company. *Monoghan* v. *City of Indianapolis, supra,* decided by the appellate court of Indiana, in 1906, involved the validity of a resolution and contract, providing for the use of ''Warren's Patented Bitulithic Pavement,'' substantially identical with that involved in this case, which was held to be in violation of the Indiana statute requiring contracts to be let to the lowest and best bidder. *Seibert* v. *Indianapolis,* 40 Ind. App. 296, 81 N. E. 99, decided by the same court, in 1907, involved a resolution and contract practically identical with that involved in this case, and the same was held unlawful. In *Siegel* v. *City of Chicago,* 223 Ill. 428, 7 Ann. Cas. 104, 79 N. E. 280, decided by the supreme court of Illinois, in 1906, a contract for laying on a concrete base, ''bitulithic wearing surface, made under patents and processes owned by the Warren Brothers Co., and commercially known and designated as 'Warren's Bitulithic Pavement,' '' Warren Brothers Company having bound itself to furnish the material to any contractor bidding on the work at a fixed price, was held void under a statute requiring contracts for making public improvements to be let to the lowest responsible bidder. In *Allen* v. *City of Milwaukee,* 128 Wis. 678, 116 Am. St. Rep. 54, 8 Ann. Cas. 392, 5 L. R. A., n. s., 680, 106 N. W. 1099, decided by the supreme court of Wisconsin in 1906, the statute provided that the city might contract for the use of any patent or patented article, process, combination or work, at a stipulated sum or royalty for the use thereof. The city council passed a resolution to pave a street with ''a permanent bitulithic pavement, having a concrete foundation.'' Warren Brothers Company had filed with the board of public

works a proposal similar to the one filed in this case. The court held that the contract was not within the above-mentioned statute, authorizing the city to pay all royalty, and was in violation of the statute requiring the contract to be let to the lowest bidder, reaffirming the principles announced in *Dean* v. *Charlton, supra.*

*Fineran* v. *Central Bitulithic Paving Co.,* 116 Ky. 495, 3 Ann. Cas. 741, 76 S. W. 415, decided by the supreme court of Kentucky in 1903, involved an ordinance and contract with the Central Bitulithic Paving Company to pave with a particular patented pavement, and the court, after reviewing the earlier conflicting authorities, held that the ordinance was void, because it violated an ordinance of the city requiring such contracts to be awarded to the lowest and best bidder.

*Terwilliger Land Co.* v. *Portland* (Or.), 123 Pac. 57, decided by the supreme court of Oregon, April 23, 1912, involved contracts between the city of Portland and the Hassam Paving Company for paving with "Hassam pavement." Said company claimed to have an exclusive right to use the name of "Hassam pavement," and refused to permit any other person to lay any pavement so designated. After an exhaustive review of the authorities on the subject, the contract was held void under the Oregon statute providing that contracts should be let to the lowest responsible bidder.

We have been unable to find any case decided within the last twelve years in which a contract similar to the one involved in this case has been sustained.

The decisions upon this subject deal with two classes of cases: (1) Cases where the pavement specified, or the material required for its construction, is patented; (2) cases where the particular material specified is manufactured or monopolized by a single individual or company. The courts have attempted to make a distinction in the application of the statutes requiring contracts to be let to the lowest bidder to these different conditions. We are unable to appreciate the force of the reasoning by which the distinction is sought to be upheld. It is apparent that the one circumstance is as effectual as the other in preventing the com-

petitive bidding required, and the result attained equally violative of the spirit of the statute.

We are further confirmed in this view by the fact that the decisions in cases involving the specification of monopolized unpatented material which can be purchased only from a particular company or individual are cited by the courts indiscriminately, in support of their decisions with reference to patented material and *vice versa.*    (*Siegel* v. *Chicago, supra; Terwilliger Land Co.* v. *Portland, supra.*)

If this conclusion is correct, then the contention of appellant is supported by a great many additional decisions of recent date, among which we refer the court to the following: *Fishburn* v. *Chicago,* 171 Ill. 338, 63 Am. St. Rep. 236, 39 L. R. A. 482, 49 N. E. 532; *National Surety Co.* v. *Kansas City H. P. B. Co.* (1906), 73 Kan. 196, 84 Pac. 1034; *Kansas City H. P. B. Co.* v. *National Surety Co.* (1907), 157 Fed. 620; affirmed (1909), 167 Fed. 496, 93 C. C. A. 132.

*Messrs. Cooper & Stephenson,* and *Mr. A. H. Gray,* submitted a brief in behalf of Respondent; *Mr. James Head,* of the Bar of Boston, Massachusetts, of counsel, argued the cause orally.

Appellant's contention that because a portion of the materials to be employed in making the pavement are covered by letters patent, the action of the council in adopting bitulithic pavement is in violation of the provisions of section 3278, Revised Codes, we think wholly unsound.    The section does not have for its purpose the selection of materials for their cheapness.    The question of fitness and efficiency enters into the matter as fully as does the question of cheapness.    We think the section has for its main purpose the prevention of fraud.    The city council, acting in good faith, has the right, and it is its duty, to determine the materials that shall be employed in paving a street, that is to say, it may select brick, wood blocks, creosoted wood blocks or bitulithic pavement, or any kind of pavement it sees fit.    The city council is not called upon to play one kind of paving against another and then be compelled to select the one which shall be constructed at the least cost.    In the exercise of its discretion

the city council may take into consideration the wearing qualities, the life, the question of whether one class of paving is more sanitary than another, the question of cleanliness or freedom from dust and various other considerations. It could not have been the intention of the legislature that a city should be precluded from availing itself of the advantages of use of a patented article or machine merely because someone may have a monopoly in the sale of such patented article or machine. If the legislature intended to handicap cities in the way the adoption of appellant's theory would result, it seems to us it would have to manifest such intention by a much clearer Act than any reasonable interpretation of section 3278 would warrant.

It is true that there is some conflict in authorities upon this proposition, and that some of the authorities support appellant's position. We submit, however, that the great weight of authority and the best reasoning are against appellant's contention. We beg to call the attention of the court to the case of *Sanders* v. *Iowa City*, 134 Iowa, 132, 9 L. R. A., n. s., 392, 111 N. W. 529, in which the supreme court of Iowa, in passing upon a statute substantially the same as our own and a situation on all-fours with the case at bar said: ''A statute requiring competitive bidding and letting to the lowest bidder is not intended to prevent the acquisition of a patented article or to apply when competition is impossible. Hence, a specification for a street improvement may call for a patented article or material without violating the statute.''

We also cite the court to sections 803 and 804 of 2 Dillon on Municipal Corporations (fifth edition).

In the case at bar the owner of the patented article which appellant seeks to put under a ban offers to sell it to any contractor who may be successful in bidding for the work under consideration. This patented article represents but a small portion of the cost of the improvement; a large amount of concrete and other things are involved. If the council had specified the use of Portland cement, as it might well do, thus cutting out competition with all other forms of domestic cement, it would be as much a violation of the spirit of section 3278 as is the specification of bitulithic pavement, if appellant's theory were

to be adopted, and such theory, carried to its legitimate con-
clusion, would render the doing of public work by cities and the
purchase of supplies a farce.

It would be an anomalous situation if the laws of the United
States could, for the public welfare, grant for limited periods
to inventors the exclusive right to make and vend their inventions,
and the laws of the various states, on the other hand, should
prevent cities and towns, which in many instances are practically
the sole customers for patented articles and machines, from
using such patented articles or machines. It seems to us that
such a situation as this is not to be implied unless absolutely
necessary to carry out the legislative purpose clearly expressed.
Certainly this court should not adopt a construction which will
prevent cities, acting in good faith, from obtaining and using
such patented articles and processes as are necessary to enable
them to carry on their municipal functions in the way best
adapted to promote the happiness, comfort and enlightenment of
their citizens. There is nothing in section 3278 which directly
or by implication calls for anything more than competition where
competition is possible. It does not, directly or by implication,
prevent the city from purchasing or otherwise acquiring for use
patented articles. The competition which the section enjoins and
requires is such competition as the exercise of good business judg-
ment will bring about. It is not the hide-bound competition that
is based solely upon the principle of cheapness that is referred
to. As further supporting the views of respondent in the prem-
ises, we beg to call the court's attention to the following au-
thorities: *Holmes* v. *Council Detroit,* 120 Mich. 226, 77 Am. St.
Rep. 587, 45 L. R. A. 121, 79 N. W. 200; *Knowles* v. *City of
New York,* 176 N. Y. 430, 68 N. E. 860; *Baird* v. *Mayor, etc.,*
96 N. Y. 567; *Gleason* v. *Dalton,* 28 App. Div. 555, 51 N. Y.
Supp. 337; *Bye* v. *Altantic City,* 73 N. J. L. 402, 64 Atl. 1056;
*Milner* v. *City of Trenton,* 80 N. J. L. 253, 75 Atl. 939; *Schuck*
v. *City of Reading,* 186 Pa. 248, 40 Atl. 310; *Hastings* v.
*Columbus,* 42 Ohio St. 585; *Trapp* v. *City of Newport,* 115 Ky.
840, 74 S. W. 1109; *Campbell* v. *Southern Bitulithic Co.,* 32 Ky.
Law Rep. 799, 106 S. W. 1189; *Rhodes* v. *Board,* 10 Colo. App.

99, 49 Pac. 430; *Carey Salt Co.* v. *City of Hutchinson,* 72 Kan. 99, 82 Pac. 721; *Bunker* v. *City of Hutchinson,* 74 Kan. 651, 87 Pac. 884; *Field* v. *Barber Asphalt Co.,* 117 Fed. 925; *Warren* v. *Barber Asphalt Pav. Co.,* 115 Mo. 572, 22 S. W. 490; *Tousey* v. *Indianapolis,* 175 Ind. 295, 94 N. E. 225; *City of Baltimore* v. *Raymo,* 68 Md. 569, 13 Atl. 383; *Dillingham* v. *Spartanburg,* 75 S. C. 549, 9 Ann. Cas. 829, 117 Am. St. Rep. 917, 8 L. R. A., n. s., 412, 6 S. E. 381; *Lacoste* v. *City of New Orleans,* 119 La. 469, 44 South. 267; *Warren Bros. Co.* v. *City of New York,* 190 N. Y. 297, 83 N. E. 59.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The city council of the city of Great Falls, having determined that it was of public concern that a portion of one of its streets, designated as First avenue north, be paved, caused the city engineer to prepare plans and specifications for the proposed improvement, and also an estimate of its cost. This he did. The property abutting on the portion of the street to be paved is described as "embracing each and every lot in the south half of blocks 307, 308, 309, 310, and 311, and in the north half of blocks 312, 313, 314, and 315." These include all lots fronting on the avenue from the west line of Park Drive to the east line of Sixth street. Lots 8 to 14, inclusive, in block 310, belong to the United States, being occupied by the federal building. The engineer's specifications contained this paragraph: "Attention of all contractors is called to the agreement of Warren Brothers Company, filed with this city, in accordance with which agreement Warren Brothers Company agrees to license all contractors desiring to bid for the work to lay the bitulithic pavement in accordance with its patent and terms of said agreement." The following is a copy of this agreement:

"Boston, July 6, 1911.
"To the Honorable Mayor and City Council of Great Falls, Montana—

"Gentlemen: Inasmuch as it is deemed advisable by the proper authorities that bids be received for the improvement of certain

streets in the city of Great Falls, state of Montana, with the bitulithic pavement; and inasmuch as the construction of said pavement requires the use of certain patented processes and compounds; and inasmuch as competitive bidding in the letting of contracts for street improvements is deemed advisable, in order to provide for such competitive bidding and at the same time secure the adoption of the bitulithic pavement as the kind of pavement to be constructed in such streets as may hereafter be determined, the undersigned Warren Brothers Company, as owners of all patents and processes covering the laying of said bitulithic pavement, hereby proposes and agrees for the consideration hereinafter named, to furnish to the city of Great Falls, or to any bidder to whom a contract may be awarded to pave any street or streets in the city of Great Falls with bitulithic pavement at any time within one year after this date or at any time thereafter until this proposition is formally withdrawn, and who shall enter into a contract with such surety or sureties as may be required by said city of Great Falls, the following material ready for use coupled with a free license to use any or all patents, trademarks, or trade names now owned or which may hereafter be owned by Warren Brothers Company necessary to lay said pavement:

"(1) The necessary roadway mixture for the wearing surface having a thickness of two (2) inches after compression, prepared under the patent processes of Warren Brothers Company, and delivered hot in the wagons of the city or contractor at the bitulithic mixing plant, located in the city of Great Falls, said plant to be located within three (3) miles of the work to be performed.

"(2) The right to use any and all patents, trademarks and trade names now owned or which may hereafter be owned or controlled by Warren Brothers Company, which are necessary to be used in the laying of such pavement.

"(3) The bituminous flues coating cement, necessary for coating the wearing surfaces, delivered on wagons of the city or contractor at the bitulithic mixing plant, located as above.

"'(4) An expert who will give proper advice as to the building of such pavement will be furnished to the city or contractor, at the expense of Warren Brothers Company.

"(5) Two daily examinations of the mixture as delivered on the street will be made at the laboratory of Warren Brothers Company to determine if uniformity has been accomplished in the mixture and construction, and reports thereof will be made to the proper city authorities; said samples to be sent prepaid to the laboratory of Warren Brothers Company, Water street, East Cambridge, Mass., by the city or contractor.

"The price at which this service is offered to any and all contractors who made a bid on the bitulithic pavement in the city of Great Falls, state of Montana, is one and 50/100 dollars ($1.50) per square yard of finished pavement, at which price it is also agreed to furnish the mixture for making all repairs, if any, which may be necessary for the wearing surface, during the life of said patents, f. o. b. Great Falls, in barrels for reheating.

"The accepting of the bids by your city, and the letting of a contract for the same, is all that shall be necessary to bind Warren Brothers Company to this agreement.

"The above agreement made with the understanding that it applies only to contracts, work on which can be performed continuously, aggregating not less than ten thousand (10,000) square yards."

The specifications included an estimate of the cost of the entire improvement in case bitulithic pavement should be used, fixed at $40,000. Of this amount, $26,200 was apportioned to the abutting property, making the amounts assessable to each lot, excluding those belonging to the United States, $420. The remainder was charged to the city. Prior to any definite action by the council, a majority of the persons owning lots abutting on the portion of the avenue to be improved had by address to the council recommended that it require the use of bitulithic pavement. On September 16, 1912, the council passed a resolution for the pavement of the designated portion of the avenue, declaring that it was its intention to cause it to be paved, if on or before September 23 objection in writing should not be made by

the owners of two-thirds of the property to be affected or ben-
efited. The resolution adopted the plans and specifications of
the engineer, ordered the work to be done in accordance there-
with, fixed a day for hearing objections, and directed the clerk
to give five days' notice by publication in a daily newspaper pub-
lished in the city. It specifically required bids to be made upon
the basis of the use of the processes and compounds covered by
the Warren Bros. patent. It directed that $26,200 of the cost
of the improvement be assessed against the abutting lots and be
paid by the owners of them, excluding those owned by the United
States, and that the cost of the portion in front of the latter,
and at the intersection of cross-streets and alleys, be a charge
against the city and paid out of its street fund. It required the
amount assessed against each lot to be paid in a single install-
ment and within one year from the completion of the improve-
ment. The cost of the portion of the improvement in front of
the lots owned by the United States government was made a
charge against the street fund, under an ordinance of the city
theretofore enacted as ordinance No. 362, which declares, in
effect, that the cost of any improvement upon any street made
under section 3386 of the Revised Codes, in front of property
belonging to the city, the state of Montana, or the United States,
shall be a charge against the city. It further declares that,
upon the final adoption of the resolution for any such improve-
ment, the city shall be obligated to pay the cost of the portion of
it in front of property held by such public ownership, and that
upon its completion the mayor and clerk are authorized, and it
shall be their duty to issue warrants of the city drawn upon its
street fund for the amounts due and payable in that behalf.
Upon the adoption of the resolution, the council caused to be
published the following notice:

"Notice is hereby given that the undersigned at his office
in the courthouse, Great Falls, Montana, will receive sealed
proposals until 8 o'clock p. m., September 30, 1912, for the fur-
nishing of all labor, tools, materials, and appliances for the con-
struction of a bitulithic pavement on a concrete base, together
with all necessary sewerage and grading, as shown on the plans

filed in the office of the city engineer on First avenue north from the west line of Park Drive to the east line of Sixth street. The city council reserves the right to reject any or all bids or to waive defects and accept any bid.

"W. H. Harrison, City Clerk."

The plaintiff, a resident of the city, is the owner of property abutting upon First avenue and subject to assessment for its proportionate share of the cost of the improvement. He is also the owner of a large amount of other property in the city upon which he pays taxes. On September 23 he filed with the city clerk his written protest and objection to the improvement. What, if any, action was taken with reference to it does not appear. Thereupon he brought this action for an injunction to restrain the defendant and its council from letting a contract to anyone to have the contemplated work done, on the grounds (1) that the city council is without jurisdiction to order the improvement, because ordinance 362 and the resolution passed in pursuance thereof are void in that the ordinance does not provide a system for doing the work of improvement, as is required by section 3369, Revised Codes, and because it imposes upon the city the obligation to pay the cost of the improvement in front of the property belonging to the United States; and (2) that the resolution is also void because it requires all bidders to use the processes and compounds covered by the patent of the Warren Bros. Company, and hence does not permit competition as is required by section 3278, Revised Codes. The cause is before this court on appeal by the plaintiff from an order of the district court refusing the injunction.

Among the general powers conferred upon a municipality are the following: "To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds, and vacate the same." (Rev. Codes, sec. 3259, subsec. 6.) "To create special improvement districts, designating the same by number; to extend the time for payment of assessments levied upon such districts for the improvements thereon for a period not exceeding three years; to make such assessments payable in installments and to pay all

expenses of whatever character incurred in making such improvements, with special improvement warrants, which warrants shall bear interest at a rate not to exceed six per centum per annum." (*Id.*, subsec. 80.) In addition to the power thus conferred to levy assessments and make improvements, it has power to collect a poll tax upon all able-bodied inhabitants between the ages of twenty-one and forty-five years (section 3361); this tax must be expended for street purposes (section 3364). The council is empowered to order any work upon its streets, alleys, or public places authorized by the title relating to the government of cities and towns. (Section 3365.) We find in sections 3367–3429 an elaborate system providing for the making of special improvements, including the laying of sidewalks, the paving of streets, the building of sewers, and providing the means to defray the necessary expenses. Section 3367, after again conferring the power to order street improvements, declares that the municipality shall have charge of the building of all sidewalks, and may have the work done by contract, by the street commissioner, or any authorized officer, but with the proviso that the cost of building and maintaining them shall be borne by the owners of the abutting property.

In view of the general powers conferred upon the council by the foregoing provisions, in the absence of any other provisions as to the method of procedure and the payment of expenses, on the principle that the grant of a power to do a particular thing implies also all the incidental powers necessary to carry it into effect, the council would have authority to order any necessary improvements and meet the expense of them by appropriations from any fund in its treasury available for that purpose and not otherwise appropriated. In ordering the improvement in question, the council adopted the course prescribed by sections 3369, 3370, and 3386. Section 3369 provides: "The city or town council is authorized to provide by ordinance a system for doing any or all work, in or upon the streets, highways or public places of the city or town, and for making thereon street improvements and repairs, and for doing any or all work authorized by this Act, and for the payment of the cost and ex-

penses thereof. In all cases where any part of the expense of any such improvement, except constructing sidewalks, gutters or making necessary repairing, is to be defrayed by special assessment, the council must first adopt a resolution declaring its intention to make such improvement, and fix a time at which objections to the making of such improvements will be considered." Section 3370 provides that the resolution shall designate the boundaries of the district to be affected or benefited; that notice shall be given by publication in a newspaper, or by posting, or by service upon the owners or agents of the property to be affected; that the notice shall prescribe the improvement, state the estimated cost, and designate a time for a hearing; and that, unless written objection be filed with the clerk on or before the time so appointed, the council acquires jurisdiction to order the improvement. Section 3386 reads as follows: "To defray the cost of paving, macadamizing or similarly improving any street, together with the cost of catch basins, storm drains to some main line of drainage, and appurtenances thereto, the city or town council shall assess the entire cost thereof, except the cost of paving and cross-walks, at the street and alley intersections and any amount which may be payable by any person or corporation occupying any part of any street under a franchise, as a special tax against the property bordering or abutting said streets, in proportion to the linear feet abutting or bordering the same."

The procedure pursued by the council with reference to the improvement in question appears to have been in strict conformity with these provisions, and it acquired jurisdiction to proceed unless it is incumbent upon every city or town council, before ordering any special improvement, "to provide by ordinance a system for doing any or all work upon the streets, highways, etc.,  *   *   *   and for the payment of the cost and expenses thereof." It will be noted that the council is not here required in terms to enact such an ordinance, but is merely authorized to do so. The council is the governing body of the municipality. It is given the exclusive control of streets and highways. (*Snook* v. *City of Anaconda*, 26 Mont. 128, 66 Pac.

756; Rev. Codes, secs. 3259, 3361–3365.)    The power thus con-
ferred imposes a commensurate duty, *viz.,* to exercise ordinary
diligence to keep its streets and highways in a reasonably safe
condition.    A default in the performance of this duty renders
the municipality liable in damages for any injury to a citizen
or his property caused by it.    (*Snook* v. *City of Anaconda,
supra; Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425;
*Sullivan* v. *City of Helena,* 10 Mont. 134, 25 Pac. 94.)    After con-
ferring the extensive and exclusive power with reference to the
[1]    streets and highways, it is not to be presumed that, by en-
acting section 3369, *supra,* the legislature intended to impose
as a condition that any exercise of it must be in accordance
with any carefully prepared system previously adopted.    On
the contrary, it seems apparent that the intention was to leave
it optional with the council whether it shall adopt any definite
system of uniform application, or pursue any plan which it
may deem best suited to effect the improvement contemplated
at a given time.    In other words, it is left free to provide that
all work shall be let by contract or to elect to do it itself through
a committee or board of public works, or a designated officer, or
to pursue that plan which best meets the exigencies of a particu-
lar case.    The language of the section is permissive, not manda-
tory, except as to the provisions for notice and a hearing; and,
since no reason is suggested or apparent why it should be held
mandatory, we do not think we are required to declare it to be
so.    It is to be observed, too, that the purpose of ordinance
362 is not to provide a system for doing any work, but to de-
clare a liability on the part of the city whenever it directs the
paving of a street or some part of it upon which abuts prop-
erty held by public ownership, and is therefore not subject to
taxation or special assessment.    If this purpose is legitimate, the
ordinance cannot be held to be void, because it does not provide
a system to be pursued by the city authorities in improving the
streets; nor, for the same reason, is the resolution void.    So far
as appears from the allegations of the complaint, it may be that
there is an ordinance providing the system contemplated by the

statute, and that the mode of procedure, adopted by the council with reference to First street fully meets its requirements.

Nor do we think the ordinance void because it provides that the expense of paving in front of the lots owned by the federal government shall be paid out of the street fund instead of being assessed against this property. It is true that the statute (section 3386) declares that the entire expense of paving, with the exceptions named therein, shall be assessed against the property upon the street in proportion to the linear feet abutting or bordering thereon. In terms this includes all the abutting property. The legislature, however, has no power to impose a tax [2] of any character upon any property or instrumentality of · the federal government. (*McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. Ed. 579; *Osborn* v. *Bank of the United States*, 9 Wheat. 739, 6 L. Ed. 204; Mont. Const., Ord. 1, subd. 2, *Id.*, Art. XII, sec. 2; Rev. Codes, sec. 2499.) This immunity includes special assessments. (*Fagan* v. *City of Chicago*, 84 Ill. 227; *Whittaker* v. *Deadwood*, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590.) In enacting this section the legislature must have had in mind the extent of its power, and, though it expressed its will in general terms, its evident purpose was that the power conferred was to extend to such property only as is not exempt from the imposition. It would be absurd to hold that it intended a municipality to do an act which it had not itself the power to do, or to make a requirement which could not be enforced by action or any other means. In view of the general power conferred upon a municipality to pave and improve its streets, it would also be absurd to hold that, because there chances to be abutting upon one of its streets property exempt from special assessment, it cannot proceed with the improvement of that street at all, or else must leave the portion upon which the property abuts entirely unimproved, thus exposing itself to the peril of actions for damages for injuries caused by its neglect to keep its streets in a reasonably safe condition.

Sections 3259, 3365, and 3367 confer upon the council ample [3] power to have any improvements made, and, when it is

beyond its power, under sections 3367, 3370, and 3386, to provide for defraying the expense of any portion of such improvement by special assessment upon abutting property, we think that it may devote the street fund created under the requirements of section 3361, or any money in the city treasury not set apart for some other purpose, to the carrying out of such portion of the improvement. There is nothing in the opinion in *City of Kalispell* v. *School District,* 45 Mont. 221, 122 Pac. 742, inconsistent with the view that the lots occupied by the federal building are not subject to the special assessment. We held in that case that, though the property of a school district is exempt from taxation under the provisions of section 2, Article XII, of the Constitution, and under section 2499 of the Revised Codes, it is nevertheless subject to special assessment for street improvements upon the theory that these special assessments are not taxes within the ordinary meaning of the term "tax," as used in these provisions, and that the constitutional and statutory exemptions, *supra,* have no application. Though property belonging to the federal government is exempted in the same terms as is the other property enumerated, and would otherwise fall within the letter of the decision, yet for the reason that the federal government is supreme within the purview of the powers granted to it by the Constitution, and cannot be subject to any state, its property is exempt from special assessments, as well as ordinary taxes, and this even in the absence of any such provisions as those found in our Constitution or state laws. (*McCulloch* v. *State of Maryland, supra.*)

This brings us to the question presented by the second contention made by council for the plaintiff, *viz.,* that the proceedings of the council are void because, by its resolution and its notice calling for bids, it has specifically required the use of bitulithic [4] pavement, thus eliminating competition in bidding, in violation of section 3278 of the Revised Codes. This section declares: "All contracts for work, or for supplies, or material, for which must be paid a sum exceeding two hundred and fifty

(250) dollars, must be let to the lowest, responsible bidder, under such regulations as the council may prescribe.   *   *   *   "

It may be remarked, in the first place, that the address presented to the council by a majority of the owners of abutting lots cannot be considered as aiding the proposed action of the council.  There is no provision anywhere, in the legislation touching municipalities, permitting property owners to control the action of the council by petition or address when engaged in the letting of contracts for any purpose.  The power to let is lodged exclusively in the council, under the limitations prescribed by the statute.  If the statute granting the power also prescribes the procedure which must be pursued, this procedure is the exclusive guide.  The question of good or bad faith or of sound discretion on the part of the council does not affect the result.  The question always is, What does the statute say shall be done, and has the council done it?  The provision requiring competitive bidding is designed to prevent favoritism and to secure to the public the best possible return for the expenditure of the funds which the property owners are required to furnish, through the payment of taxes and assessments.  But the benefits to be anticipated from the letting of contracts by this mode will vary according to circumstances.  The article or material desired may be of such a character that the competitors will or may be numerous.  In other cases the persons who can compete will be few because the article or material is of such a character, or the source of supply so limited, that only a few persons can furnish it.  It may happen that there can be but one or two bidders.  The principle of competition would nevertheless still be retained, and a contract let under these circumstances would not necessarily be objectionable on the ground of illegality.  The security of the public against favoritism and extravagance would still rest in the power of the council to reject all bids.  It may happen in a given case, as here, that because the necessary article is patented, or because the source of supply is in the control of a single person, there can be no competition as to it.  One who has a patented invention has the exclusive right to make and sell it.  He can fix the price at which it must be sold

and can control the supply. He therefore has a monopoly— one granted to him by the law, it is true, but still a monopoly. None the less has he also a monopoly who owns the only gravel or sand pit or stone quarry from which the city may obtain material for construction purposes. It is thus apparent that in many, perhaps most, cases the margin for competition is practically unlimited, while in others it is comparatively narrow. In case of a patented invention, or where the source of supply is controlled by a single person, the margin disappears altogether as to that particular article. According to the theory of counsel for plaintiff, the patented invention cannot be used at all, or, in any event, cannot be noticed to contractors in the specifications as an item to be incorporated in their bids. Nor can any call be made for bids for construction work which requires the use of sand, or gravel, or stone, when the supply and price are controlled by a single individual. This theory includes the necessary postulate that, however preferable and cheap the patented article may be, the council cannot avail itself of its use, and, in the absence of more than a single supply of necessary construction material, it must abstain entirely from contemplated improvements. Did the legislature contemplate this result? There is a conflict of authority on the subject.

In the pioneer case of *Hobart* v. *City of Detroit*, 17 Mich. 246, 97 Am. Dec. 185, the question arose as to the power of the common council of the city of Detroit to let a contract for the laying of the Nicholson pavement. The patent was controlled exclusively by a single firm who alone bid for the contract. It was argued by complainant that, since there could be but a single bidder, public competition was excluded, and hence that the contract was void. The court held, however, that the statute did not prevent the city from contracting for the Nicholson pavement, although in fact the only bidder was the patentee. In the course of the opinion, Mr. Chief Justice Cooley said: "The statute has fixed a rule from which great benefit will be derived in many cases, and some benefit in most cases; and it has declared, in effect, that contracts shall be valid which com-

ply with that rule. The rule is made general for the benefits that will generally flow from it; and the purpose is to attain those benefits wherever practicable, be they more or less. We cannot declare a contract void on the sole ground that no benefits followed the application of the rule in that particular case, though the common council might have refused to enter into it for that reason, if they had seen fit. And if we cannot declare a contract void because of this result, neither, I think, can we do so because beforehand the result might be supposed inevitable.'' The rule announced in this case was reaffirmed and followed in *Holmes* v. *Council,* 120 Mich. 226, 77 Am. St. Rep. 587, 45 L. R. A. 121, 79 N. W. 200. We are inclined to agree with the reasoning of Judge Cooley. In principle, it can make no difference whether the council makes its selection of the desired article or material before the specifications are made up or after the bids are opened. But we are not required to go so far as the court did in that case. We think the facts in this case make it apparent that, except as to the patented processes and compounds of the Warren Bros. Company, the cost of which is only a part of the gross cost of the improvement, the principle of competition has been retained. By the agreement filed by the company with the council, the cost of the patent is made the same to every bidder. Yet there is a wide margin left within which fall the labor, other materials, tools, machinery, *etc.,* necessary to complete the improvement, with reference to which there can be the freest competition.

The case of *Saunders* v. *City of Iowa City,* 134 Iowa, 132, 9 L. R. A., n. s., 392, 111 N. W. 529, is directly in point. The Warren Bros. Company, as here, had filed an agreement with the city binding itself to furnish its patent to all bidders. The court held that, though the council in its resolution ordering the improvement and in its advertisement for bids required the use of bitulithic pavement, it did not violate the statute relating to competitive bidding. In the course of the opinion the court said: ''All that the law means, as we view it, is that, in all cases where competition may exist, such competition shall

be allowed by receiving bids, and, in the absence of express pro-
hibition, there is nothing to warrant the exclusion of patented
articles.    The provision as to bidding regulates the exercise of
a power and was manifestly not intended to limit it.    And
neither the public nor the parties benefited by the improvement
should be deprived of the best and most approved pavements
because full effect cannot be given to an Act passed to regulate
the exercise of a power expressly granted by other statutes.    In
other words, the provision as to competitive bidding has refer-
ence only to those cases where there may be competitive bidding,
and not to cases where some of the articles which enter into the
work may be in the hands of particular individuals.    Courts
have never willingly blocked the wheels of progress.    They
should, and have at all times sought to, encourage and stimulate
endeavor and foster individual initiative; and, while a great
conservative force in government, they do not consciously stand
in the way of either mental or material advancement.    The
statute providing for letting a work of public improvement to
the lowest responsible bidder was enacted to secure competition,
to prevent fraud, and defeat graft.    It was enacted to remove,
as far as possible, all favoritism and to secure the performance
of public work at the lowest possible price; but it was not in-
tended thereby to impose upon individuals the use of an article
simply because it was old, nor to thrust upon the people some-
thing that was inferior and antiquated, simply because there
might be competition as to that, but not in a newer and superior
article." The rule as here stated has been recognized as sound
by the courts of New York, Kansas, California, Indiana, Ohio,
Maryland, New Jersey, Missouri, and perhaps other states.    (*In
the Matter of Dugro,* 50 N. Y. 513; *State ex rel. Dawes* v. *Board
of County Commrs.,* 57 Kan. 267, 45 Pac. 616; *Yarnold* v. *City
of Lawrence,* 15 Kan. 126; *Perine C. & P. Co.* v. *Quackenbush,*
104 Cal. 684, 38 Pac. 533; *Tousey* v. *City of Indianapolis,* 175
Ind. 295, 94 N. E. 225; *Hastings* v. *Columbus,* 42 Ohio St. 585;
*Baltimore City* v. *Flack,* 104 Md. 107, 64 Atl. 702; *Bye* v. *At-
lantic City,* 73 N. J. L. 402, 64 Atl. 1056; *Newark* v. *Bonnell,*

57 N. J. L. 424, 51 Am. St. Rep. 609, 31 Atl. 408; *Verdin* v. *St. Louis,* 131 Mo. 26, 33 S. W. 480, 36 S. W. 52; *Swift* v. *St. Louis,* 180 Mo. 80, 79 S. W. 172.)

The leading case laying down the contrary rule is *Dean* v. *Charlton,* 23 Wis. 590, 99 Am. Dec. 205. But the Wisconsin court in the later case of *Kilvington* v. *Superior,* 83 Wis. 222, 18 L. R. A. 45, 53 N. W. 487, found it necessary to recede somewhat from the rule as broadly stated in *Dean* v. *Charlton.* In that case it was held that a contract let for the construction of a cremating furnace, the mode for building which was patented, was not invalid where the letting of the contract for the labor of construction and the materials was to the lowest responsible bidder; the owner of the patent having agreed to allow the use of the patented mode at a specified price by anyone bidding for the contract. In the course of the opinion by Mr. Justice Pinney, we find this comment upon *Dean* v. *Charlton:* "In view of the legislation which followed *Dean* v. *Charlton* (an Act validating the assessment), and the fact that it was decided by a divided court, and the general trend of subsequent decision, and the further fact that patented methods and processes now enter so largely into various classes and kinds of public work, we are not disposed to extend the rule of that case beyond the point there decided." A collection of cases sustaining the divergent rules announced in *Hobart* v. *City of Detroit* and *Dean* v. *Charlton* may be found in the notes to *Kilvington* v. *Superior,* as reported in 18 L. R. A. 45, and *Allen* v. *Milwaukee,* 5 L. R. A., n. s., 680. Some of the courts recognize a distinction between cases in which the city authorities purpose to pay for the contemplated improvement by general taxation, and those in which payment is to be made by means of special assessments. We shall not stop to compare them or undertake to find a reason for the distinction, if there is any. Our statute requires [5] that all work necessitating the expenditure of a sum exceeding $250 shall be let by contract to the lowest responsible bidder. This requirement extends to and includes expenditures

made from the general revenues of the municipality as well as from funds derived from special assessments.

The order of the district court is correct, and is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument and takes no part in the foregoing decision.

