Argued at Pendleton May 7; reargued at Salem June 26; affirmed
July. 17, 1934

## STATE·LAND BOARD *v.* DAVIDSON ET AL.

(34 P. (2d) 608)

*Frank P. Farrel,* of Medford (Ernest C. Smith, of Hood River, on the brief), for appellant.

*George R. Wilbur,* of Portland, for respondent.

CAMPBELL, J. The East Fork Irrigation District is an irrigation district, wholly within Hood River county, Oregon, organized in the year 1913 pursuant to the laws of the state of Oregon and thereafter, and prior to the year 1916, issued its bonds in the sum of $225,000 of which $82,000 is now outstanding and un-

paid. In the year 1918, the State Land Board of the state of Oregon loaned to defendants, H. F. Davidson and Mary B. Davidson, the sum of $4,500 from moneys of the common school fund and to secure payment thereof took a mortgage on the real property of said Davidsons, consisting of a farm lying within the boundaries of the said district. This mortgage was renewed in 1928. In 1932 the State Land Board brought, in the Circuit Court of Hood River county, a suit to foreclose the said mortgage and, among other parties thereto, made respondents, said irrigation district, a party defendant.

Prior to the institution of said suit, respondent had levied against the mortgaged real property, the following annual assessments for maintenance of the district and for payment of its bonded indebtedness:

| Year | Operation and Maintenance | All Other Purposes | Total |
|------|------|------|------|
| 1928 | $54.00 | $81.00 | $135.00 |
| 1929 | 54.00 | 81.00 | 135.00 |
| 1930 | 54.00 | 81.00 | 135.00 |
| 1931 | 54.00 | 81.00 | 135.00 |

At the time of filing the foreclosure proceedings, all of said assessments were delinquent and unpaid with the exception of the first one-half of the assessment levied for the year 1928.

In the said foreclosure suit, all defendants defaulted except respondent which filed its answer setting forth the facts with reference to its organization and the issuance of its bonds as aforesaid and praying that the said assessments and bonds be decreed to be liens against the land described in plaintiff's mortgage, superior and prior in right to the lien of plaintiff's said mortgage.

The cause was tried on a stipulated statement of facts as above set forth with reference to said mortgage, the organization of the district and the issuance of the bonds and the existence of the annual unpaid assessments and a further stipulation that the bonds contained a provision to the effect that all the lands and property in said district shall remain liable to be assessed for the payment of the principal and interest thereon.

The trial court foreclosed the mortgage and decreed it to be inferior to the lien of the annual assessments and decreed that the property be sold subject to such liens.

The question involved is: Does a mortgage executed in favor of the State Land Board subsequent to the organization of an irrigation district, and subsequent to the issuance of bonds by such district, obtain precedence over said bonds and the assessments levied for the payment thereof and for the maintenance and operation of the district?

The State Land Board is the instrumentality by which the state administers the common school fund. This fund is obtained from the proceeds of the lands which have been granted to the state for educational purposes and is set apart as a separate and irreducible fund and the interest therefrom to be set aside and exclusively applied to the support and maintenance of the common schools: Constitution of Oregon, Article 8, § 2.

Respondent is an irrigation district organized under the laws of the state as a municipality for the purpose of administering the law in relation to the irrigation of land lying within its boundaries: *Twohy Bros. v. Ochoco Irr. Dist. et al.*, 108 Or. 1 (210 P. 873,

216 P. 189). The common school fund is held by the state in its sovereign capacity as distinguished from its proprietary ownership: *State Land Board v. Lee,* 84 Or. 431 (165 P. 372).

■ Plaintiff contends that because the money loaned was a part of the common school fund therefore the mortgage securing the loan is a lien superior to all liens in favor of the district. It will be observed that the respondent was organized during the year 1913 and all its outstanding bonds had been issued prior to the year 1916, and that plaintiff's mortgage was not executed until the year 1919.

The case upon which appellant strongly relies, *Eagle Point Irr. Dist. v. Cowden,* 137 Or. 121 (1 P. (2d) 605), is a case in which a State Land Board mortgage had been executed prior to the organization of, or the issuance of bonds by, the irrigation district. The suit was to foreclose a tax lien in favor of the district, and the State Land Board intervened to foreclose its mortgage. It was held that such a tax lien did not take precedence over a prior mortgage covering the same land in favor of the State Land Board, and what is said therein must be read in the light of that fact. In the citation of authority we must distinguish between the facts of each individual case.

In the instant case, the bonds and other obligations of respondent being prior in time to the mortgage of the State Land Board, different principles apply. In *State Land Board v. Campbell,* 140 Or. 196 (13 P. (2d) 346), the plaintiff sought to foreclose a mortgage securing moneys of the common school fund. The county, by virtue of § 69-722, Oregon Code 1930, claimed a lien for general taxes arising subsequent to the mortgage. The court held that the mortgage was en-

titled to priority. The above section of the code does not attempt to take away such precedence from a State Land Board mortgage. The statute was rendered somewhat ambiguous by its amendment at the legislative session of 1927, but we are of the opinion that the legislature did not intend to take away such priority from state property for general taxes. In the instant case the assessments are for the payment of prior bonds outstanding and maintenance of the project, and the question of general taxes for the maintenance of the state, counties and schools, is not involved and we do not pass upon that proposition.

The law under which this irrigation district was organized made no provision for segregating bonds issued by an irrigation district into units so as to cover a particular tract of land in the proportion that said tract bears to the whole tract covered by the bond issue. It is only when the assessments for the necessary annual service is made that that is done. Yet the law does provide that "all land of the district shall be and remain liable to be assessed for such payments": Oregon Code 1930, § 48-504.

"Could any court reasonably hold that under our irrigation district law, or any law in principle the same, all the land of the district would not be liable to be assessed for the payment of the principal and interest of the bonds and other obligations of the district? As to the bonds, such payment is an obligation nominated in the bonds and all of the land of the district would be liable therefor." Noble v. Yancey, 116 Or. 356 (241 P. 335, 42 A. L. R. 1178).

There is no doubt that the constitution provides for the common school fund to be maintained as an irreducible fund, the interest or revenue derived therefrom to be used for the purpose therein designated

(Oregon Constitution, Article 8, § 2), and any attempt of the legislature to divert it into other channels would be unconstitutional: *Eagle Point Irr. Co. v. Cowden,* supra. Holding that the State Land Board mortgage is inferior to the bonds of the irrigation district of prior issue and sums levied and assessed for the annual service of such bonds and maintenance is not diverting any part of the irreducible school fund to any other than its constitutional purpose. This does not prevent the legislature from providing other means for keeping the fund intact.

The bonds of respondent, at the time of their issuance, as well as the other obligations assumed by the district at the time of its organization, were secured by all the land in the district. The State Land Board, by loaning money to the owner of land pledged for the payment of the bonds and support of the other obligations of the district, cannot through that process take such land out from under its just obligations and thus transfer these burdens to the other landowners in the irrigation district.

When the State Land Board made the loan to defendants Davidson, it did so with full notice of the outstanding bonds and other obligations of the district and the law relating to the protection thereof, and that all the land in the district "shall be and remain liable for such obligations": Oregon Code 1930, § 48-504.

The statute directs on what security the State Land Board shall make a loan of such funds.

"Such loans shall be secured by note and mortgage * * * on real estate * * * of unexceptionable title, and free from all incumbrances * * *. Nothing in this section contained shall prevent the making of such loans upon the security of mortgages upon

lands situated in irrigation districts, at the discretion of the State Land Board, taking into consideration the amount of bonded indebtedness of such district as compared with the valuation of the real property of such district.'' Oregon Code 1930, § 60-1203.

If a subsequent State Land Board mortgage was superior to the bonds and the assessments for bond service, why should it be necessary for the State Land Board to consider the ''bonded indebtedness'' of the district?

The legislature indicated its attitude towards the irrigation district's obligations when it provided:

''Any land, the title to which may now or hereafter be vested in the state, * * * in any irrigation district, shall be subject to taxation by the district, and the full amount of assessments due against said lands shall be paid the district before the same is sold, resold or contract for sale executed. * * *.'' Oregon Code 1930, § 48-806; L. 1917, page 761.

This legislation is intended to protect the man who loans money, to put water on the land within an irrigation district, from appropriation of his security thereafter by the state.

■ It is common knowledge that land lying within this particular irrigation district, in the semi-arid portion of the state, is of little or no value without irrigation. If the state has acquired lands within the district, that had been pledged for the payment of bonds and maintenance prior to their acquisition by the state, is there anything wrong in compelling the state to contribute its just share to that obligation? No one would contend that the state could compel the irrigation district, without just compensation, to furnish water service to the state lands. ''Private property shall not be

taken for public use, nor the particular service of any man be demanded without just compensation * * *'': Article 1, § 18, Constitution of Oregon. This section applies with the same force to corporations and groups of persons as to individuals.

When the respondent organized as an irrigation district, the law imposed on it certain duties and responsibilities and furnished it with the means to discharge these imposed obligations. It would not be just or fair to thereafter permit the State Land Board by indirection to deprive respondent of any part of its resources, or to compel the district, in order to retain such resources, to assume an obligation to which it was not a party. We, therefore, conclude with the learned trial judge that the appellant's mortgage is subject to and inferior to respondent's lien for said assessments.

The decree of the lower court will be affirmed. It is so ordered.