TONGUE RIVER AND YELLOWSTONE RIVER IRRIGA-
TION DISTRICT, Respondent, *v.* HYSLOP, County
Treasurer, et al., Defendants; SHERLOCK, State Land
Commissioner, et al., Appellants.

(No. 7,984.)
(Submitted September 26, 1939. Decided October 16, 1939.)
[96 Pac. (2d) 273.]

Cause submitted on briefs of counsel.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Wesley W. Wertz,* Special Assistant Attorney General, for Appellants.

*Mr. P. F. Leonard,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants State of Montana and Nanita Sherlock, as State Land Commissioner, from a judgment for plaintiff. The complaint alleges that the plaintiff irrigation district was organized and created on June 24, 1911, in accordance with the provisions of Chapter 146, Laws of 1909, by an order of the district court entered after proper hearing on a petition for that purpose; that it expressly included school lands owned by the state of Montana; that it issued bonds pursuant to the above chapter; that assessments were thereafter made against all of the property in the district, including school lands owned by the state; that "so far as known to the plaintiff the special taxes and assessments for said irrigation district levied against the aforesaid described real estate owned by the state of Montana for years prior to 1920 were paid"; that assessments since 1920 amounting in the aggregate to $5,861.88 have not been paid; that the members of the State Board of Land Commissioners have refused to pay the assessments, and deny that the assessments constitute a lien upon the property. Plaintiff sought a judgment declaring that the assessments are good and valid and that they constituted first and prior liens upon the lands.

The appealing defendants demurred to the complaint on the grounds, first, that the court had no jurisdiction of the persons of the defendants or the subject of the action; second, that the complaint does not state facts sufficient to constitute a cause of action. The court overruled the demurrer and granted defendants twenty days to answer. Defendants declined to answer and

suffered judgment to be entered against them for the relief demanded in the complaint, from which judgment they appealed.

The only question involved is whether under the statutes existing at the time of the creation of plaintiff district school lands owned by the state could be included in the district and made subject to assessments for the costs of the irrigation project.

Defendants make the further contention that if the statutes contemplated that such lands could be included in the district and made subject to the assessments, such statutes would be unconstitutional. In the view we take of the case, the latter question need not be considered, for it is our view that the statutes existing when the district was created did not contemplate that such lands should be included in an irrigation district and subjected to assessment liens. It is our view that whether they should be included or not, and whether they should be chargeable with irrigation district assessments, were and are questions of policy for the legislature to determine, if we assume that there is no constitutional barrier to such legislation.

The legislative policy at the time of the creation of the plaintiff district must be ascertained from legislative Acts then in force. Concededly, the district was created under Chapter 146, Laws of 1909. Prior to the passage of that Chapter, section 2401, Revised Codes of 1907, was in effect, providing: "Any lands belonging to the State of Montana, or to the United States may be included in any irrigation district, but such lands shall not be liable for the payment of any assessments for any purpose until after such lands shall come into private ownership as hereinafter provided. Where any such State or United States lands subject to irrigation in any district are under lease or occupied by settlers, such lessee or settler may be assessed for the following purposes, viz.: maintenance, administration and interest on bonds. All such assessments shall be a lien upon any crops or products grown on such lands. Such assessments shall be collected in the same manner as state or county taxes on personal property. In the event that any such state or government land in any district is sold to any person, corporation or

company such land shall immediately become liable for all assessments in the same manner as other lands in the district and the water apportioned to said land by the directors shall be appurtenant to the land and inseparable therefrom.''

Chapter 146 expressly repealed section 2401 and the only reference made by it to the state-owned lands is found in section 1 thereof. That section provides that a majority in number of the holders of title or evidence of title to lands susceptible of irrigation and representing a majority in acreage of such lands may propose the organization of an irrigation district. It then provides: ''The county assessment roll or rolls for the year last preceding, or the certificate of the County Clerk and Recorder, or the certificate of the Register of the State Land Office, shall be sufficient evidence of title for the purpose of this Act. Where lands have been purchased from the State and part or all of the purchase money has been paid but the patent or deeds from the State to such lands have not been issued, the receipt or receipts held by the purchasers, or the certificate of the Register of the State Land Office showing the payments on account of purchase, shall be evidence of title to such lands, under this Act.''

While this language is not as clear as it might be, it seems apparent to us that as to state lands it was the intention of the legislature that they should not be included in an irrigation district unless they had been sold and part or all of the purchase money had been paid. In the event that all or a part of the purchase money had been paid, then the purchaser was to be deemed the owner even though patent or deeds from the state had not yet issued.

Having repealed section 2401, Revised Codes of 1907, which expressly provided for the inclusion of state-owned lands in an irrigation district, and which authorized assessments only after the lands passed into private ownership, and remaining silent as to state-owned lands which had not been sold by the state, we must conclude that the legislature intended by Chapter 146 that such lands should not be included therein and subjected to assessments.

Reliance is placed upon section 4014, Revised Codes of 1921, which empowered the State Land Board to sign a petition for the inclusion of lands belonging to the state in an irrigation district and to pay annual assessments. That section was not enacted until in 1921, and if it could apply to this district, it would take some affirmative action on the part of the State Land Board thereafter to place the lands within the district and to subject them to the assessments. No such action is alleged to have been taken here. That section was repealed by Chapter 60, Laws of 1927, and again by Chapter 75, Laws of 1929. By Chapter 58, Laws of 1929, the legislature expressly declared: "Provided, however, that the interest of the State in any lands within an irrigation district shall not be subject to assessment or taxation for any purpose whatever, nor shall the State be liable for the payment of any costs or charges whatever arising from the fact that its lands are included within an irrigation district.

"The interest of a purchaser of state lands in the land purchased shall be subject to the same liens as other real estate; provided, however, that in the case of sale, only the interest of the purchaser or of the assignee shall be sold. In the case of any sale under the provisions of this section, including the sale for taxes, the purchaser shall succeed to all the rights of the purchaser from the State under the certificate of purchase and a new certificate of purchase shall be issued to the person entitled thereto, upon satisfactory proof being submitted to the board; provided, however, that in the case of sale under execution or decree of Court such new certificate of purchase shall not be issued by the board until the period of redemption from such sale has expired and the Sheriff's deed has been issued. In the case of sale for taxes, the new certificate shall not be issued until the tax deed has been issued." Section 4014 cannot be relied upon here since this district was created in 1911.

Plaintiff also relies upon the case of *City of Kalispell* v. *School District No. 5*, 45 Mont. 221, 122 Pac. 742, Ann. Cas. 1913D, 1101, as sustaining the view that general language is sufficient to place the state lands within an improvement district. That

case supports the view that general language is sufficient to place public property within an improvement district on like terms with private property. That case is distinguishable in that there was no legislative history on the subject pointing to a different legislative intent, as here. On this point the case of *State ex rel. Freebourn* v. *Yellowstone County,* 108 Mont. 21, 88 Pac. (2d) 6, is more applicable than the *Kalispell Case.*

Plaintiff also relies, as did the trial court, on the case of *Toole County Irr. District* v. *State,* 104 Mont. 420, 67 Pac. (2d) 989, but that case is also distinguishable. In that case the lands involved were in private ownership when placed in the irrigation district. They were properly included in the district at the time the district was created. The state subsequently obtained deeds to the property, and as a matter of course simply stepped into the shoes of the prior owners, so far as the question of placing the lands within the irrigation district was concerned. Here the lands were never properly included in the district, since there was no law so authorizing.

There is general language in the *Toole County Case* that ▆▆▆ supports the position of plaintiff. The language used in an opinion must be considered in the light of the facts of the particular case wherein the language appears. The *Toole County Case* was like that of *State Land Board* v. *Davidson,* 147 Or. 504, 34 Pac. (2d) 608, cited and relied upon in the *Toole County Case,* except that in the *Davidson Case* the state's loan was made after the creation of the district and after the lands given as security were included in the district by the owners, whereas in the *Toole County Case* the mortgage of the state existed when the then owners placed the lands in the district. In fact, in the state of Oregon the courts do not go as far as does the *Toole County Case* in subjecting the interest of the state as mortgagee to the lien of such assessments. In Oregon, under facts such as those involved in the *Toole County Case,* where the mortgage of the state existed prior to the creation of the district, the lien of the mortgage is held superior to that of the lien for assessments. (*Eagle Point Irr. District* v. *Cowden,* 137 Or. 121,

1 Pac. (2d) 605; *Umatillo County* v. *Bowman,* 155 Or. 49, 62 Pac. (2d) 266.) We do not feel warranted under statutory provisions such as ours to extend the rule of the *Toole County Case* beyond the facts involved in that case.

Contention is also made that the state is estopped from asserting that the lands are not properly in the district by reason of the judgment so declaring, and by reason of its action in paying some of the assessments and receiving the benefits therefrom. The judgment describing these lands as being within the district is not binding on the state, since it cannot be sued without its consent. (*State ex rel. Freebourn* v. *Yellowstone County,* supra.) And neither can it be estopped by reason of unauthorized acts of its officers. (Compare *Florer* v. *Wood River Valley Irr. District,* 56 Idaho, 176, 51. Pac. (2d) 700.)

The question whether state lands, as a matter of justice and equity, should be included in irrigation districts and subject to assessments is not before us. The legislature has always assumed that it had authority to fix the policy in that respect, as was done by section 2401, Revised Codes of 1907, section 4014, Revised Codes of 1921, and Chapter 58, Laws of 1929. In the absence of specific legislation on the subject at the time plaintiff district was created, there was no authority for including state lands in the district and to make them subject to a lien for assessments.

The judgment is reversed and the cause remanded with direction to sustain the demurrer to the complaint.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ERICKSON concur.

Rehearing denied November 28, 1939.