Argued September 26, 1957, affirmed January 15, 1958

# PENINSULA DRAINAGE DISTRICT NO. 2 *v.*
## CITY OF PORTLAND ET AL
### 320 P. 2d 277

*Robert L. Myers,* of Portland, argued the cause for appellant. With him on the brief were Winfree, McCulloch, Shuler & Sayre, and William C. McCulloch, all of Portland.

*Marian C. Rushing,* Deputy City Attorney for Portland, argued the cause for respondent, City of Portland. With her on the brief was Alexander G. Brown, City Attorney for Portland.

*Charles Peterson,* of Portland, argued the cause for respondent State of Oregon. With him on the brief were Robert Y. Thornton, Attorney General for Oregon, and C. W. Enfield, Assistant Attorney General and Chief Counsel for the Oregon State Highway Commission.

BRAND, J.

This is a suit by the plaintiff Peninsula Drainage District No. 2 for the foreclosure of certificates of delinquency issued and held by the plaintiff district. The defendants are the City of Portland and the State of Oregon. The certificates were issued on account of purported assessments levied against a tract of land which at the time of the levy was owned by the United States of America. Subsequent to the making of the assessments the tract against which the assessments were made was acquired by the defendants severally. Parcel "A" of said tract described in the complaint became the property of the City of Portland, and Parcels "B" and "C" as described, became the property of the State of Oregon. All three tracts were within the territorial area of the plaintiff Drainage District. The learned circuit court entered a decree in favor of the defendants. Plaintiff appeals.

Title to part of the tract was acquired by the United States on 12 January 1943 and title to the balance was acquired on 7 January 1944. The assessments against the tract were made for the year July 1, 1946–June 30, 1947, and for the ensuing three years, and certificates of delinquency were issued on 16 February 1948, 15 March 1949, 15 March 1950, and 15 March 1951 on account of the nonpayment of the four assessments respectively. The United States continued to be the owner of the tract during the four tax years in suit and refused to pay the assessments. The assessments were all levied against the United States and the certificates of delinquency in each case show the United States as the owner of the tract.

The tract in question is generally known as the East Vanport Project which was instituted by an agency of the United States and which was terminated and com-

pleted by an instrument described as a "Program Action, Public War Housing" effective 28 February 1946. Thereafter the property was sold to the city and state. Suit to foreclose was filed on 21 May 1952 against the defendants as owners.

The pleadings are heavily encumbered by conclusions of law, but from them we find the following issues presented. Plaintiff is organized under ORS 547.005 et seq. It contends that it was required by state law to make the assessments which are in issue and relies upon two provisions of our statutes, which read as follows:

"(1) The board of supervisors shall each year make a computation of the whole amount of money to be raised by the district through assessments for the ensuing year for any purposes whatsoever in carrying out the provisions of the Drainage District Act, including maintenance and operation and estimated delinquencies on assessments. This amount when determined by the board shall constitute an assessment upon all the land·included in the district and shall be apportioned by the board in accordance with the report of the commissioners as confirmed or amended by the court as provided for in ORS 547.235.

"(2) Any land owned by any person totaling less than one acre shall be assessed as one acre.

"(3) Any land, the title to which is vested in the state, or state lands sold under contract in any drainage district, shall be subject to taxation by the district, and the full amount of assessment due against such lands shall be paid to the district at the same times and in the same manner as other drainage district assessments are paid.

"(4) The tax collector shall receive any past due bond of the drainage district or any past due interest coupon from any bond of the district in payment of any assessment made for the purpose of

paying bonds or bond interest of the district, and shall receive in payment of assessments levied for operation and maintenance purposes any warrants drawn upon the operation and maintenance fund, such warrants received in payment of assessments to be in order of issuance." ORS 547.455.

"The certificate of delinquency and all receipts for assessments, charges or tolls paid by the irrigation or drainage district subsequent thereto shall be prima facie evidence in the suit that the real estate described in the certificate and receipts was located in the irrigation or drainage district and was subject to be assessed or charged by the district for district purposes, and that the assessments, tolls or charges were regularly levied as provided by law, and were not paid except by such irrigation or drainage district." ORS 548.655.

Plaintiff contends that the liens and certificates of delinquency were valid prior to and at the time the defendants acquired the property from the United States and remained valid against the defendants. In its reply brief plaintiff states the issue as follows:

"* * * The issue is * * * whether or not the drainage district, having at the time of its organization included within its boundaries land in private ownership, which are thereafter acquired by the United States, can continue to assess said lands during their ownership by the United States their proportionate share of the costs of the original construction of the protective works and the continued maintenance thereof. We submit that this is a very real and vital distinction which must be drawn in this case. We are not in this litigation concerned with the problem of whether lands owned by the United States can be forced by a state or political subdivision thereof into an improvement district without the United States' consent and then subjected to assessment for the benefits which fol-

low. The question is rather whether or not the benefits, in effect having been 'built into' the lands prior to their acquisition by the United States in such a manner that they are continuing and impossible of removal, can be enjoyed by the United States without its land being subjected to assessments."

The defendants contend that under the Constitution and laws of the United States and the laws of Oregon, the United States is exempt from taxation by any state or its subdivision; that the special assessments constituted taxes and that the United States had never given its consent to be so taxed. The conclusion suggested is that since the assessment was void when made, the subsequent acquisition of title by the defendants could not breathe life into a void assessment.

The defendants have presented other affirmative defenses which need not now be considered. In plaintiff's brief it states that it "did not attempt to enforce by adversary proceedings [against the United States] collection of the assessments in suit." Any such attempt, they concede, "would have been futile, solely because the national government is not amenable to the process of Oregon's courts."

Concerning the admitted fact that the United States acquired the tract in question by condemnation and that the plaintiff District was a party defendant in those proceedings, plaintiff contends that the United States did not profess by said suits to acquire from the plaintiff the right to levy assessments against the land in the District and that such right continued unimpaired during all the time when the United States was the owner of the tract. Our question on this phase of the case is not whether the United States acquired by condemnation the right of the District to levy assessments, but is rather whether the District had any

such right regardless of the method by which the United States acquired the land.

■ At the threshold of inquiry we observe that the plaintiff does not rely upon any consent by the United States to be sued either on a claim in personam or in rem. Plaintiff pleads that it is not informed whether the United States "never consented to be taxed or assessed * * * and therefore denies said matters." This is not proper plea that consent was given and we find no evidence of any express consent.

We now address ourselves to the question whether the assessments made during the ownership of the tract by the United States were valid or void. The federal statute admitting the State of Oregon into the Union imposed upon the state the condition that "the said state shall never tax the lands or the property of the United States in said state." 11 Stat 383 (1859); 5 ORS page 1080. The conditions imposed by that act were accepted by the State of Oregon. Laws 1859 (First Extra Session page 29); 5 ORS page 1081. Even prior to the admission of Oregon to the Union the law provided:

> "The following property shall be exempt from taxation:—(1) All property real and personal of the United States and of this state." Laws 1854, Deady's Code, page 894.

By the laws of 1907 the exemption was changed to read:

> "1. All property, real and personal, of the United States and this State, except land belonging to this State held under a contract for the purchase thereof." General Laws of Oregon, Chapter 268, page 486.

This provision remained unchanged until 1945 when the exemption was amended to read:

> "(1) All property, real and personal, of the United States, its agencies or instrumentalities, ex-

cept where taxation of any such property by this state is authorized or permitted by the United States." Oregon Laws, 1945, Chapter 296, page 440.

The next and only further amendment was made in 1953 when the statute provided:

"The following property shall be exempt from taxation: (1) All property, real and personal, of the United States, its agencies or instrumentalities to the extent that taxation thereof is forbidden by law." Oregon Laws 1953, Chapter 698, page 1357.

This provision as verbally modified by the code revisers reads as follows:

"Except as provided in ORS 307.050, 307.060, 307.070 and 307.080, all property of the United States, its agencies or instrumentalities, is exempt from taxation to the extent that taxation thereof is forbidden by law." ORS 307.040.

There are no provisions in ORS 307.050, 060, 070, or 080 which have any bearing upon the present inquiry. Thus it appears that at the times when all four of the assessments were made by the plaintiff District, the statute in effect was that which was enacted in 1945 and which remained in effect until 1953. It is unnecessary in this case to consider what if any change was made by the 1953 amendment. Since ORS 307.040, cited by plaintiff, was enacted at a time subsequent to the making of the assessments and the issuance of the certificates of delinquency, it is not relevant in this case.

As stated by Judge Wolverton in *United States v. Southern Oregon Co.*, 196 F 423, 426, "It is plain, and indeed axiomatical that the United States cannot be taxed by a state, and, a fortiori cannot be taxed by any county of a state." See also, *Brotherhood Co-op Nat. Bank v. Hurlburt*, 21 F2d 85, opinion by Judge

Robert S. Bean, holding that National Banks being agencies of the general government cannot be taxed by a state without the consent of Congress.

The leading case of *Van Brocklin v. Anderson* is of especial interest because of the similarity of the facts to those in the case at bar. In that case the state sued to foreclose state tax liens against the defendants who had acquired title from the United States. While title was held by the United States and prior to the acquisition of the land by the defendants the state levied taxes against the land. After defendants had acquired title the state sought to foreclose purported liens which had been levied during the years when the ownership was in the United States. It was held that such levies were void, created no lien and "therefore, cannot be collected, even since the plaintiffs in error [the defendants] have redeemed or purchased the land from the United States." *Van Brocklin v. Anderson,* 117 US 151, 29 L ed 845, 855. See also, *United States v. Allegheny County,* 322 US 174, 88 L ed 1209; *McCulloch v. Maryland,* 4 Wheat (U.S.) 316, 4 L ed 579; *United States v. Woodworth,* 170 F2d 1019; *United States v. City of Milwaukee,* 140 F2d 286, CCA 7th (1944); *United States v. City of Buffalo,* 54 F2d 471, CCA 2d (1931); *United States v. Pierce County,* 193 F 529, W.D. Wash (1912). The rule is recognized in *Creason v. Douglas County,* 86 Or 159, 163, 167 P 796.

We consider it unnecessary further to discuss the rule that the State of Oregon and a fortiori its instrumentalities are without power to subject property of the United States to ordinary general taxation. The compact of 1859 alone should be decisive against any such power. Plaintiff concedes that the United States is not subject to general taxation by the state or its instrumentalities but in its first brief it insists that

the assessments did not amount in law to taxation and were therefore valid when made against the land while it was owned by the United States. To support this contention plaintiff cites *State ex rel. v. Bishop,* 169 Or 448, 127 P2d 736, 129 P2d 276. In that case we stated that an assessment by a drainage district "is against the benefits conferred by the improvement, and the annual sums payable are not taxes in the ordinary meaning of that term. * * *" Of course there is a difference between assessments and ordinary property taxes, but in that opinion we repeatedly recognized that the assessments were taxes of a special kind and certainly were levied in the exercise of the taxing power. As said in *Wilson v. City of Medford,* 107 Or 624, 647, 215 P 184:

> "The power to tax is an attribute of sovereignty; and the power to levy a special assessment, although it is to be differentiated from a pure tax, is a branch of the power of taxation, and when exercised is a manifestation of sovereignty. * * *" Citing cases.

As pointed out in the able opinion of the circuit judge, government interests might be impaired and destroyed by special assessments as well as by ordinary taxes, and the reason for sovereign immunity of the United States is the same in both cases. From 90 ALR 1140 we quote:

> "In the absence of an act of Congress allowing the lands of the United States to become subject to assessment, it has been uniformly held that such lands are not liable for special assessments for local improvements." Citing many cases.

See, *Mullen Benevolent Corp. v. United States,* 290 US 89, 78 L ed 192; *Lee v. Osceola & Little River Road Improvement Dist.,* 268 US 643, 69 L ed 1133; *Varney River Drainage District v. Spiedel,* 347 Mo 1124, 152

SW2d 54; *Ford v. City of Great Falls,* 46 Mont 292, 127 P 1004, and cases cited 90 ALR 1140.

■ It would appear that the plaintiff in its reply brief has somewhat receded from its broad contention that special assessments can be legally levied against land owned by the United States. It now apparently concedes that if a drainage district at the time of its original organization is so formed as to take within its boundaries land owned by the United States, it cannot during the period of such ownership levy special assessments against the federal land. But plaintiff claims that the situation is different if the United States acquires land within the district after the district has been formed. In our opinion this is a distinction without a difference. The basis in each case is the sovereign immunity of the United States from suit. The United States by reason of its sovereignty can only be sued by its consent. 91 CJS 399, United States, § 176. "There is no distinction in this respect between suits against the United States and suits against its property, and the property of the United States cannot be proceeded against without its consent." Id at 401. The consent of the United States to be sued can only be given by act of Congress. 91 CJS 418, § 181. Again, "Consent to sue the United States must be clearly given, expressly and explicitly, and such consent will not be implied or inferred  *  *  *." 91 CJS 403, § 176.

In *United States v. Anderson Cottonwood Irr. Dist,* 19 FSupp 740, the United States as plaintiff brought suit to cancel liens imposed upon its land by the Irrigation District. As in the case at bar the district was first formed, after which the plaintiff acquired property therein. Prior to the purchase by the plaintiff, bonds had been issued by the district. After the pur-

chase and pursuant to state law, assessments were levied against plaintiff's land for the purpose of retiring the bonds. A decree was rendered canceling the liens. The court said:

> "Defendants apparently rely upon the distinction between a 'tax' and an 'assessment for benefits conferred.' This admitted distinction creates no difference of any import to the solution of the instant problem. The question is not (as in the different cases where the California courts have held certain limitations of taxation power not applicable to assessments) one of the power of the Legislature of the state of California to assess its own or privately owned lands within its borders. All of the cases which make the distinction between an 'assessment for benefits conferred' and a 'tax' recognize that both have their common source in the sovereign power of taxation." 19 FSupp 740, 741.

The court agreed that the United States as purchaser takes subject to existing liens, but held that the levy of an assessment for benefits against plaintiff's land was void. The court said:

> "The levy of the questioned assessments by the district is clearly an attempt by a public corporation of the state of California to impose a tax on property owned by the United States. Such levy is unlawful, the purported liens created thereby are void, and the threatened future levy of such assessments must be restrained." Id at 742.

The broad constitutional grounds for holding that property of the United States is not subject to assessments for benefits is well stated in *Bishop v. Jordan,* 104 Cal App 319, 285 P 1096; *Ford v. City of Great Falls,* supra, 46 Mont 292, 127 P 1004; *Nevada National Bank v. Poso Irrigation District,* 140 Cal 344, 73 P 1056; *United States v. Power County, Idaho,* 21

FSupp 684; *McCulloch v. Maryland,* 4 Wheat (U.S.) 316, 4 L ed 579, supra; *Fagan v. Chicago,* 84 Ill 227 (1876).

■ The controlling rule of Sovereign Immunity is equally applicable whether the United States acquired the land before or after the formation of the improvement district.

The argument of plaintiff is reduced to this; that although the assessment created no right either in personem or in rem against the United States, it nevertheless created a valid lien enforceable against any successor in interest of the United States. This theory would in substance enforce the lien to the detriment and against the sovereign immunity of the United States, for it would reduce the saleable value of the land to the extent of the unenforceable liens. Obviously a purchaser from the United States would not pay as much for land if it would immediately upon his purchase become automatically subject to liens levied over a period of years as he would pay for an unencumbered title. Application of plaintiff's theory would mean that the United States as owner in fee of land subject to no enforceable lien was nevertheless prowerless to convey such fee. If the assessments had been levied and remained unpaid over a long period of years, the saleable value of the land of the United States might be reduced to zero. Where then would there be sovereign immunity?

In *Lee v. Osceola & Little River Road Improvement Dist,* supra, 268 US 643, 69 L ed 1133, 1135, the Supreme Court said:

"* * * In the Van Brocklin Case, supra, p. 168 [29 L.ed. 851, 6 Sup. Ct. Rep. 670], it was said that the United States has the exclusive right to control and dispose of its public lands, and that

'no state can interfere with this right, or embarrass its exercise.' Obviously, however, the United States will be hindered in the disposal of lands upon which local improvements have been made, if taxes may thereafter be assessed against the purchasers for the benefits resulting from such improvements. Such a liability for the future assessments of taxes would create a serious encumbrance upon the lands, and its subsequent enforcement would accomplish indirectly the collection of a tax against the United States which could not be directly imposed. In Nevada Nat. Bank v. Poso Irrig. Dist. 140 Cal. 344, 347, 73 Pac. 1056, in which it was held that the state could not include lands of the United States in an irrigation district so as to impose an assessment for benefits which would become a liability upon a subsequent purchaser, it was said that 'if the grantee of the United States must take the land burdened with the liability of an irrigation district made to include it without the assent of the government or the purchaser, it attaches a condition to the disposal of the property of the government without its sanction or consent, * * * which must, in such cases, interfere with its disposal.' "

It is true that this is a case in which the ownership of land by the United States antedated the formation of the assessment district, but that fact in no way weakens the force of the decision to the effect that an assessment if void against lands of the United States is equally void against a subsequent purchaser of the United States. See *Bishop v. Jordan,* supra, 104 Cal App 319, 285 P 1096; *Nevada Nat. Bank v. Poso Irr. Dist,* supra, 140 Cal 344, 73 P 1056.

In *Mullen Benevolent Corp. v. United States,* supra, 290 US 89, 78 L ed 192, the facts were as follows: The village of American Falls in 1915 and 1916 duly created assessment districts for the construction of sewers and sidewalks, authorized bonds to finance the work and

levied assessments against the parcels of land bene-
fited, totaling an amount calculated to suffice for the
payment of the bonds. The bonds were purchased by
the predecessor in interest of plaintiff. Between 1920
and 1927 the United States acquired property within
the district. There was general knowledge that the
total of the assessments made would be insufficient to
pay off the bonds. As the United States acquired each
lot it paid the amount of the assessment against it.
But in 1928 the city made a reassessment of all land
within the district including that which was then owned
by the United States. Concerning this the United States
Supreme Court tersely said: "But as the land was then
owned by the United States, the assessment was a null-
ity." Citing *Van Brocklin v. Anderson,* supra. It will be
observed that in *Van Brocklin v. Anderson* the issue
involved the validity of liens for general taxes against
United States owned land. But the court in the Mullen
case had no hesitancy in citing *Van Brocklin v. Ander-
son* as authority for the proposition that liens for
special assessments could not be imposed upon lands
owned by the United States.

Chief reliance of the plaintiff is placed on *United
States v. Aho,* 68 FSupp 358, and *United States v.
Florea,* 68 FSupp 367, which involved similar ques-
tions. In *United States v. Aho* the United States
brought a condemnation action to acquire a fee simple
title to certain lands within the Beaver Drainage Dis-
trict, an Oregon quasi-municipal corporation. The
defendant district claimed that it had a compensable
interest in the land condemned, over and above the
amounts tendered to and accepted by the private
owners of the lands taken. In that case it was conceded
that property of the United States is not taxable by
the State of Oregon, but a distinction was made be-

tween general taxes and special assessments. A strong ethical argument is made in support of the proposition that "the United States should pay the annual assessment to prevent disaster in projects created for a public purpose. But it is conceded that liability can neither be predicated upon need alone, nor solely upon public policy." 68 FSupp 358 at 360. The court quoted from the Oregon statute supra which directs the assessment of all the lands in the district. It then quoted from a note in 90 ALR 1137-38, as follows:

"'In a broad sense, special assessments are taxes, and the right to impose assessments has its foundation in the taxing power of the government; and yet in practice, and as generally understood, there is a broad distinction between the two terms. Taxes, as the term is generally used, are public burdens imposed generally on the inhabitants of the whole state, or some civil division thereof, for governmental purposes, without reference to peculiar benefits to particular individuals or property. Assessments have reference to impositions for improvements which are specially beneficial to particular individuals or property and which are proposed in proportion to the particular benefits supposed to be conferred. They are justified only because the improvements confer special benefits, and are just only when they are divided in proportion to such benefits.'"

The court continued as follows:

"Likewise, the same authority points out that an exemption from taxation does not give immunity from assessments levied by such districts. It is said:

"'It is a general rule, to which there are but few exceptions, that a constitutional or statutory exemption from taxation is to be taken as an exemption from ordinary taxes only, and does not include special assessments for local improvements.'" Id at 362.

Examination of the annotation from ALR will show that the cases cited in support are subject to the qualification that "it is usually held that in order to subject public property to special assessments for improvements the legislative intent must be clearly expressed." See, *Portland v. Multnomah County,* 135 Or 469, 296 P 48. Far more important, we find that the cases cited involved in each instance the question as to the power of a governmental agency of a state to levy assessments for benefits against that state or against an agency of that state. The power to levy assessments against land of the United States was not involved. It is one thing for a state to authorize such assessments by its own agencies, and quite another for a state agency to assert the right to assess lands of the United States, another sovereign. Following the cases cited, and in the same note from ALR, we find a distinction made between intra-state assessments and those by state agencies against the property of the United States, "as in that case one sovereignty is invading another." 90 ALR 1140. Then follows the statement which we have already quoted, to the effect that in the absence of consent by Congress it has uniformly been held that lands of the United States are not liable for special assessments for local improvements. Ibid. The weight of authority supports this position and many judicial statements of the rule exempt federally owned land without noticing any distinction between cases in which the assessment district was formed before the United States acquired the land and those in which the district was later formed to include federal land.

In *United States v. Aho* the court cited and relied upon *State Land Board v. Davidson,* 147 Or 504, 34 P2d 608. That case was concerned with the priority of a lien imposed by an irrigation district over a mortgage

to the State Land Board. Rights of the United States were neither mentioned nor involved. Reliance was also placed upon the language employed by this court in *State ex rel. v. Bishop*, 169 Or 448, 127 P2d 736, 129 P2d 276. We have already discussed that case. No claim against land of the United States was involved. We are unable to agree with the statement in *United States v. Aho* that "This decision [the Bishop case] sufficiently establishes the proposition that this 'tax' can be levied  *  *  *  upon real property which has come into possession of the United States." *Ford v. City of Great Falls,* supra, 46 Mont 292, 127 P 1004, and other cases cited supra. *United States v. Aho* was decided by the District Court of Oregon on 15 May 1944. *United States v. Florea* was decided by the same court and judge on 17 December 1945. Both involved condemnation proceedings brought by the United States for the acquisition of land within a drainage district. The fact that both Aho and Florea were condemnation cases, while the pending case is a suit by such a district to foreclose liens levied against federally owned land, suggests an important distinction. Both parties to the pending litigation claim that Aho and Florea are favorable to their positions, and we confess that the impact of those cases is not wholly clear.

It would seem that if the drainage districts in the Aho and Florea cases had the power to assess for benefits lands acquired by the United States within the districts to the same extent that they could assess privately owned lands, there would be no property or other compensable right of the districts which would be impaired or affected by reason of the act of the United States in condemning land within the district. Under those conditions the districts would not be entitled to any compensation from the United States in

condemnation cases because they had lost nothing. Conversely stated, any right to compensation in the condemnation cases depended upon the proposition that the districts had possessed but had lost the power in the future to assess the lands so condemned. Now the Aho and Florea cases appear to hold that the districts would be entitled to compensation in the condemnation cases, which decisions must be based on the premise that after the condemnation the districts would be powerless to assess the federally owned land. In *United States v. Florea* the court said:

> "* * * Thus, as the United States is taking this parcel of land and destroying the right of the landowners in the aggregate, to levy upon the parcel, the government is bound to pay for the property right so destroyed." 68 FSupp 367, 375.

And in *United States v. Aho,* the court said:

> "* * * The District is deprived of the right granted by the legislature of Oregon to levy assessments or take toll from this particular parcel for the service rendered. * * *" 68 FSupp 358, 366.

And in a prior hearing in the same cases reported in 51 FSupp 137, the same court said:

> "* * * The court, obviously, by decree in this proceeding could not subject the lands to a right of assessment. If the district have the right, it would still have it after judgment, unless it were taken by condemnation." *United States v. Aho et al.,* 51 FSupp 137, 140.

In case at bar the United States brought actions for the condemnation of the lands in question. The plaintiff was a party defendant and the judgment vested a fee simple title in the United States. Assuming for the purpose of argument that the Aho and Florea cases are correct, it would follow that the

plaintiff became entitled to compensation for the loss of its power to assess. But it is admitted that the district submitted itself to the jurisdiction of the federal court and "hereby waives any claim to the just compensation to be awarded in this proceeding for the lands taken." Hence, under Aho and Florea, the plaintiff lost the right to assess federal land and receive no compensation, solely because it waived its claim therefor. The conclusion would be that the assessments levied were void, to which conclusion we have arrived by a simpler route.

In the Aho and Florea cases the court first holds that drainage districts may assess federal lands as of right. It then holds that on condemnation by the federal government that right is lost and its loss must be compensated. If we are correct in holding that the decisions authorizing intra-state assessments do not apply when a state instrumentality attempts to assess federal land and that such lands are not so assessable, then the intricate reasoning and conclusions of the federal cases involving the right of the district to compensation in eminent domain become immaterial. If the district has no power to assess lands merely purchased by the United States in the open market, then land acquired by condemnation would be equally immune to assessment, and that would end the matter.

■ We adhere to the view that by virtue of the sovereign immunity of the United States the state and its instrumentalities have no power to subject lands of the federal sovereign to assessment. We are further of the opinion that ORS 547.455 should not be construed to require the assessment of federal lands. The language in question is that the "amount when determined * * * shall constitute an assessment upon all the land included in the district * * *." (ORS 547.455).

But it is generally held that "Neither the government, whether federal or state, nor its agencies are considered to be within the purview of a statute unless an intention to include them is clearly manifested; and the rule applies, or applies especially, to statutes which would impair or divest the rights, titles, or interests of the government." 82 CJS 554, Statutes, § 317. *Swift v. Peterson,* 192 Or 97, 233 P2d 216; *State v. McVey,* 168 Or 337, 121 P2d 461, 123 P2d 181; *Allen v. Multnomah County,* 179 Or 548, 173 P2d 475; *Fidelity & Deposit Co. of Maryland v. State Bank of Portland,* 117 Or 1, 242 P 823; *National Fireproofing Co. v. Huntington,* 81 Conn 623 (1909).

■ Again, we have repeatedly held that where an act is susceptible of an interpretation which avoids challenge of unconstitutionality, the court will adopt such a construction. *Fox v. Galloway,* 174 Or 339, 148 P2d 922; *Fullerton v. Lamm,* 177 Or 655, 163 P2d 941, 165 P2d 63. We have held that when a constitutional provision prevents a statute from applying in certain cases, even where it was apparently intended to apply, the courts will not declare the act unconstitutional but will hold that it was not intended to apply to such cases, on the ground that courts are bound to presume that the legislation did not intend to violate the Constitution. *Leonard v. Ekwall,* 124 Or 351, 264 P 463; *City of Portland v. Goodwin,* 187 Or 409, 210 P2d 577; *Swift & Co. v. Peterson,* 192 Or 97, 233 P2d 216; *United States v. Herron,* 20 Wall 251, 87 L ed 251; *Lucas v. Alexander,* 279 US 573, 73 L ed 851. If, as we have held, the instrumentalities of this state are without power to interfere with the functioning of the United States by the levy of assessments against federal land, we should hold that the words "all lands of the district" do not include lands of the sovereign.

Other authorities supporting our general conclusions are: *City of San Diego v. Linda Vista Irrigation Dist.*, 108 Cal 189, 195 (1895); *United States v. Woodworth*, 170 F2d 1019 (2d C, 1948); *City of Springfield v. United States*, 99 F2d 860 (CCA 1, 1938); *United States v. City of Buffalo*, 54 F2d 471 (CCA2d 1931); *In re Drainage Dist.*, 43 Idaho 803, 255 P 411.

We take note of the solicitude manifested in a few of the cases concerning the hardship which may be imposed upon a district if its assessments cannot be enforced against land acquired by the United States. This hardship was recognized by the United States in the case at bar and in the Aho case. We have referred to the fact that in the action brought by the United States for condemnation of land within the boundaries of the Peninsula Drainage District, the plaintiff District waived any claim for compensation. That waiver was obviously induced by the contract which was executed between the United States and the plaintiff District. That contract was dated 29 April 1944 and the waiver was filed on 18 May 1944. By the contract the District agreed to provide drainage services and the United States agreed to pay amounts "equal to" certain assessments and agreed further to pay amounts "equal to" the assessments levied for the fiscal year beginning July 1, 1944 and to continue like payments annually "until such time as the Projects are demolished, disposed of or discontinued; * * * Provided, Further, that by the making of this Agreement it is not intended to determine the rights and obligations of the Government or the District with respect to the payment of taxes upon the property included in the Project after the Project shall be demolished, disposed of or discontinued."

■ Obviously the United States while denying the

right of the states to assess federal land, has nevertheless relieved the distress of the district by the voluntary assumption of the obligation to contribute toward the expense of the service which it receives in such cases. By such contracts the United States does not waive its sovereign immunity. It confers benefits. In the pending case the record indicates that the United States made the agreed payments pursuant to the contract until the termination of the federal project.

In view of our conclusions on the main issue, we find it unnecessary to pass upon the contention of the City of Portland that the portion of the tract acquired by it is now entirely devoted to public use and that the desired remedy of foreclosure and sale would be contrary to public policy even if there was an obligation upon the city by reason of its acquisition of the land. See, *Blake v. City of Tampa,* 115 Fla 348, 156 So 97; *Blythe v. City of Tulsa,* 172 Okl586, 46 P2d 310.

By this decision we do not intend to express any opinion as to the power of the plaintiff District to subject the lands in question to such assessments as may be made subsequent to the respective dates on which the land was conveyed to the defendants by the United States.

The decree of the circuit court is affirmed, none of the parties to recover costs.